J-S35039-18

2018 PA Super 204

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JAY EDWIN HORNING :
:
Appellant : No. 1442 MDA 2017

Appeal from the Judgment of Sentence July 12, 2017
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0000777-2016,
CP-36-CR-0000778-2016

BEFORE:  BENDER, P.J.E., PANELLA, J., and MURRAY, J.

OPINION BY MURRAY, J.:                    **FILED JULY 11, 2018**

Jay Edwin Horning (Appellant) appeals from the judgment of sentence imposed following his guilty plea at Criminal Information 0778-2016 and 0777-2016 to multiple counts of involuntary deviate sexual intercourse (IDSI) by forcible compulsion, IDSI of a person less than 16 years of age, rape by forcible compulsion, rape of a child, and unlawful contact with a minor.[1]  For the reasons that follow, we affirm in part and vacate in part Appellant's judgment of sentence.

The trial court summarized the relevant facts and procedural history of this case as follows:

> [O]n January 5, 2016, [Appellant] (DOB 08/23/88) was charged, at Criminal Information No. 0778-2016, with the crimes of involuntary deviate sexual intercourse (IDSI) by forcible compulsion, IDSI of a person less than 16 years of age, rape by forcible compulsion, rape of a child, and unlawful contact with a

---

[1]  18 Pa.C.S.A. §§ 3123(a)(1), (7), 3121(a)(1), (c), 6318(a)(1).

minor. These charges relate to a series of sexual assaults that occurred between 2002 and 2004, when the victim, A.M.G. (DOB 01/09/98), was between four and six years of age. [Appellant] was between 14 and 16 years of age at the time of the assaults. The victim did not reveal this abuse until December 14, 2015, when he was interviewed at the Lancaster County Children's Alliance. During a police interview on December 22, 2015, [Appellant] admitted to sexually assaulting and hurting "people in the past," including A.M.G. when A.M.G. was a child and in the care of [Appellant]'s mother.

On January 15, 2016, [Appellant] was charged at Criminal Information No. 0777-2016 with the same crimes of IDSI by forcible compulsion, IDSI of a person less than 16 years of age, rape by forcible compulsion, rape of a child, and unlawful contact with a minor. These charges relate to sexual assaults that occurred during the same time frame, 2002 to 2004, when the second victim, C.B. (DOB 04/09/99), was between four and six years of age. The victim revealed this abuse for the first time during an interview at the Children's Alliance on January 13, 2016. At the time [Appellant] was charged with these crimes involving C.B. and A.M.G.[,] he was over the age of 21.

On March 1, 2017, [Appellant] tendered an open or straight guilty plea for all charged offenses. After the submission of a written colloquy and an on-the-record colloquy, the plea was accepted as voluntary, knowing and intelligent. [Appellant]'s sentencing was deferred to allow for the completion of a pre-sentence investigation.

At the time of the plea, [Appellant] indicated that he had reviewed SORNA's "Notification of Registration and Verification Requirements under Title 42; Section 9799.10," and acknowledged that he would be subject to lifetime registration as a Tier III offender. Defense counsel made a verbal motion at that time to exclude [Appellant] from registration. Counsel were asked to submit memoranda of law on the applicability of SORNA for the [c]ourt's consideration prior to sentencing.

On July 12, 2017, [Appellant] appeared for sentencing on both dockets. At Information No. 0777-2016, this [c]ourt imposed concurrent sentences of four to eight years [of] incarceration for all offenses. Restitution in the amount of $1,206.76 was imposed, as well as fees and costs.

- 2 -

At Information No. 0778-2016, [Appellant] received concurrent sentences of four to eight years [of] incarceration for all charges. These concurrent sentences were made consecutive to the sentences at No. 0777-2016, for an aggregate sentence of 8 to 16 years [of] incarceration. [Appellant] was further ordered to pay restitution in the amount of $125.00, plus fees and costs.

[Appellant] was deemed ineligible for a Recidivism Risk Reduction Incentive (RRRI) sentence due to his current convictions for IDSI and rape, and his ineligibility was not waived by the Commonwealth. Finally, [Appellant] was advised at sentencing of his lifetime registration obligations pursuant to SORNA as a Tier III sexual offender.

On July 21, 2017, [Appellant] filed a post-sentence motion challenging (1) the applicability of SORNA, and (2) the aggregate minimum sentence as manifestly excessive, an abuse of discretion, and cruel and unusual punishment. The Commonwealth filed a response on August 17, 2017. By Order dated September 8, 2017, [Appellant]'s post-sentence motion was denied.

On September 18, 2017, [Appellant] filed a timely notice of appeal to the Superior Court of Pennsylvania from his judgment of sentence. *See* 1442 MDA 2017. Pursuant to this [c]ourt's directive, [Appellant] filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Trial Court Opinion, 11/17/17, at 1-4 (footnotes and record citations omitted).

Appellant presents the following issues for review:

A. Whether the lower court erred in ordering [Appellant] to comply with the registration and notification requirements of SORNA when the criminal acts occurred between 2002 and 2004 when [Appellant] was 16 years of age or younger?

B. Whether the imposition of consecutive sentences resulting in an aggregate sentence of not less than eight nor more than sixteen years was clearly unreasonable and manifestly excessive?

Appellant's Brief at 7.

First, Appellant argues that he should not be subject to SORNA's registration requirements, which became effective in December 2012 and were not in effect at the time he committed his crimes between 2002 and 2004. Although Appellant acknowledges that SORNA was in effect when he pled guilty to those crimes, he asserts that application of SORNA to his case violates the *ex post facto* clause of the Pennsylvania Constitution under **Commonwealth v. Muniz**, 164 A.2d 1189 (Pa. 2017). Because this issue presents a question of law, our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Lee**, 935 A.2d 865, 876 (Pa. 2007).

Pennsylvania's Sex Offender Registration and Notification Act (SORNA), 42 Pa.C.S.A. §§ 9799.10-9799.42, establishes a statewide registry of sexual offenders. 42 Pa.C.S.A. § 9799.16(a). On December 20, 2012, SORNA replaced the then existing sexual offender registration statutory provisions, commonly known as Megan's Law III, 42 Pa.C.S.A. §§ 9791-9799.9 (expired). The General Assembly implemented SORNA in order to bring Pennsylvania's sexual offender reporting system in line with the federal mandates of the federal Adam Walsh Child Protection and Safety Act of 2006, Public Law 109-248, 42 U.S.C. §§ 16901–16991, which requires a tier-based registration and notification scheme. **Muniz**, 164 A.3d at 1203-04.

For purposes of registration, SORNA classifies sexual offenders into the following three tiers:

> Those convicted of Tier I offenses are subject to registration for a
> period of fifteen years and are required to verify their registration

information and be photographed, in person at an approved registration site, annually. 42 Pa.C.S.[A.] § 9799.15(a)(1), (e)(1). Those convicted of Tier II offenses are subject to registration for a period of twenty-five years and are required to verify their registration information and be photographed, in person at an approved registration site, semi-annually. 42 Pa.C.S.[A.] § 9799.15(a)(2), (e)(2).

Those convicted of Tier III offenses are subject to lifetime registration and are required to verify their registration information and be photographed, in person at an approved registration site, quarterly. 42 Pa.C.S.[A.] § 9799.15(a)(3), (e)(3).

*Id.* at 1206-1207 (footnotes omitted).

The offenses that constitute Tier I, II, and III offenses are set forth in 42 Pa.C.S.A. § 9799.14(b)-(d). Here there is no dispute that Appellant is a Tier III sexual offender due to his various convictions of rape and IDSI. **See** 42 Pa.C.S.A. § 9799.14(d)(2), (4). As a Tier III offender under SORNA, Appellant is subject to lifetime registration and quarterly reporting requirements. **See** 42 Pa.C.S.A. § 9799.15(a)(3), (e)(3). Because he committed these offenses prior to when SORNA became effective, Appellant argues that under **Muniz**, the application of SORNA to his sentence violates the *ex post facto* clause of the Pennsylvania Constitution.

In **Muniz**, the defendant was convicted in February 2007 of two counts of indecent assault of a person less than 13 years of age with sentencing scheduled for May 2007. **Id.** at 1193. At the time of his conviction, Muniz "would have been ordered to register as a sex offender with the Pennsylvania State Police for a period of ten years pursuant to then-effective Megan's Law

III." *Id.* at 1192 (citing 42 Pa.C.S.A. § 9795.1 (expired)). Muniz, however, never appeared for sentencing and absconded until he was later apprehended in September 2014. *Id.* When Muniz was finally sentenced in 2014, the trial court ordered him to comply with the lifetime registration provisions under the then-effective SORNA, pursuant to which he was a Tier III sexual offender. *Id.* Muniz appealed.

On appeal to our Supreme Court, five of the six participating justices held that even though the General Assembly identified SORNA's enhanced registration provisions as non-punitive, they nonetheless constituted punishment. *Id.* at 1218. The Supreme Court further determined that the retroactive application of SORNA's registration requirements to Muniz violated the *ex post facto* clause of the Pennsylvania Constitution. *Id.* at 1218-19. Our Supreme Court explained:

> Critical to relief under the *ex post facto* clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. Based on these concerns, [in *Calder v. Bull*, 3 U.S. 386 (1798),] Chief Justice Chase set out four categories of laws that violate such prohibitions:
>
> > 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law

- 6 -

required at the time of the commission of the offense, in order to convict the offender.

Furthermore, two critical elements must be met for a criminal or penal law to be deemed *ex post facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it. As such, [o]nly those laws which disadvantage a defendant and fall within a **Calder** category are *ex post facto* laws and constitutionally infirm. The *ex post facto* clauses of the United States and Pennsylvania Constitutions are implicated here because a holding rendering the effects of SORNA's registration requirements punitive would place the statute into the third **Calder** category: application of the statute would inflict greater punishment on appellant than the law in effect at the time he committed his crimes.

*Id.* at 1195-1196 (quotation marks omitted, some citations omitted or modified).

Because Muniz committed his crimes prior to the existence of SORNA, the Supreme Court determined that application of that statute would inflict greater punishment than the law (Megan's Law III) in effect at the time he committed his crimes. Consequently, our Supreme Court concluded that the retroactive application of SORNA's registration and reporting requirements to Muniz violated the *ex post facto* clauses of the United States and Pennsylvania Constitutions. *Id.* at 1223.

Like **Muniz**, this case implicates the *ex post facto* clause of the Pennsylvania Constitution because application of SORNA's registration requirements would impose greater punishment on Appellant than the law in effect at the time he committed his crimes. **See id.** at 1195-1196. Appellant committed his rape and IDSI crimes in 2002 and 2004. At that time, Megan's

Law II, 42 Pa.C.S.A. §§ 9791–9799.7 (expired),[2] was in effect. On December 20, 2011, the General Assembly enacted SORNA, which became effective on December 20, 2012, prior to Appellant's guilty plea and sentencing, but well after he committed the offenses. Although SORNA increased the registration period for some crimes, the registration requirement for individuals convicted of rape and IDSI remained lifetime registration. **Compare** 42 Pa.C.S.A. § 9795.1(b)(2) (expired) **with** 42 Pa.C.S.A § 9799.14(d). While SORNA did not enhance the registration period for rape and IDSI, it did augment the registration requirements for all Tier III offenders, which included quarterly in-person reporting and the posting of their personal information on the Pennsylvania State Police website. **Muniz**, 164 A.3d at 1210-11. As our Supreme Court pointed out in **Muniz**, these additional registration requirements constitute a greater punishment than what Megan's Law would have imposed and consequently, their retroactive application violates the *ex post facto* clause of the Pennsylvania Constitution. **Id.** at 1193-1196, 1216.

The Commonwealth contends that **Muniz** is inapplicable to this case because the defendant in **Muniz** was convicted prior to when SORNA became effective, and sentenced after, whereas Appellant was not convicted of his crimes until after SORNA became effective. Commonwealth's Brief at 10. We

---

[2] "Megan's Law III did not completely repeal and replace Megan's Law II; rather, it made significant changes to Megan's Law II." **Commonwealth v. Derhammer**, 173 A.3d 723, 726 (Pa. 2017) (citing **Muniz**, 164 A.3d at 1197).

reject this argument. While the Commonwealth is correct that the defendant in **Muniz** was convicted prior to when SORNA became effective, its argument disregards our Supreme Court's analysis of the constitutional *ex post facto* prohibitions. The Supreme Court made clear that "the *ex post facto* clauses of the United States and Pennsylvania Constitutions are implicated" by SORNA where "application of the statute would inflict greater punishment on appellant than the law in effect at the time he committed his crimes." **Id.** at 1196. This is exactly what transpired here.

Appellant pled guilty after SORNA became effective, and the trial court retroactively imposed the new registration requirements and other provisions of SORNA on him for crimes he committed when Megan's Law II was in effect. Because Appellant committed his crimes at a time when registration requirements for rape and IDSI were less burdensome and stringent, we conclude that the retroactive application of SORNA's registration and reporting requirements to Appellant violated the *ex post facto* clause of the Pennsylvania constitution. **See Muniz**, 164 A.3d at 1192-1196, 1223. Accordingly, we vacate Appellant's judgment of sentence to the extent it requires Appellant to register as a sexual offender pursuant to SORNA.[3] Because we have determined that application of SORNA to Appellant's case is unconstitutional under the Pennsylvania *ex post facto* clause, we need not address his

---

[3] We note that this does not preclude Appellant from having to register as a sexual offender under Megan's Law II.

argument regarding whether SORNA is inapplicable to him as a juvenile offender.

Second, Appellant challenges the discretionary aspects of his sentence. "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014), *appeal denied*, 104 A.3d 1 (Pa. 2014). "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence." *Id.* We conduct this four-part test to determine whether:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post[-]sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

*Commonwealth v. Baker*, 72 A.3d 652, 662 (Pa. Super. 2013) (citation omitted), *appeal denied,* 86 A.3d 231 (Pa. 2014). "A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." *Commonwealth v. Dodge*, 77 A.3d 1263, 1268 (Pa. Super. 2013) (quotations and citations omitted), *appeal denied*, 91 A.3d 161 (Pa. 2014). "Whether a substantial question has been raised is determined on a case-by-case basis[.]" *Commonwealth v. Fisher*, 47 A.3d 155, 159 (Pa. Super. 2012).

Appellant preserved his discretionary aspects of sentencing claim by raising it in a post-sentence motion. *See* Post-Sentence Motion, 7/21/17. Appellant also filed a timely notice of appeal and included in his appellate brief a concise statement of the reasons relied upon for the allowance of his appeal pursuant to Pennsylvania Rule of Appellate Procedure 2119(f). *See* Appellant's Brief at 17-21. Thus, we must determine whether Appellant's sentencing claim raises a substantial question for our review.

Appellant argues the that trial court's decision to impose consecutive as opposed to concurrent sentences on his two criminal informations resulted in a sentence that was manifestly excessive. Appellant further asserts that the trial court's sentence violated the fundamental sentencing norms in that it failed to take into consideration his age at the time of his offenses. "[A] sentencing court generally has discretion to impose multiple sentences concurrently or consecutively, and a challenge to the exercise of that discretion does not ordinarily raise a substantial question." *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014). We have explained, however, "that an excessive sentence claim – [i]n conjunction with an assertion that the court failed to consider mitigating factors – raises a substantial question." *Id.* at 1253 (citing *Commonwealth v. Perry*, 883 A.2d 599, 602 (Pa. Super. 2005)). Because Appellant has raised a substantial question, we turn our attention to the merits of his sentencing claim.

Our standard of review for discretionary aspects of sentencing claims is

as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Id.* (quoting ***Commonwealth v. Shugars***, 895 A.2d 1270, 1275 (Pa. Super.

2006)).

Section 9721(b) of the Sentencing Code sets forth general sentencing

standards for trial courts and provides, in pertinent part:

> **(b) General standards.—**. . . the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. . . . In every case in which the court imposes a sentence for a felony or misdemeanor, modifies a sentence, resentences an offender following revocation of probation, county intermediate punishment or State intermediate punishment or resentences following remand, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed.

42 Pa.C.S.A. § 9721(b).

We conclude that the trial court did not abuse its discretion in sentencing

Appellant. At the outset we note that the record reflects that the trial court

had the benefit of reviewing a pre-sentence investigation report. N.T.,

7/12/17, at 17. "[W]here the sentencing judge had the benefit of a

presentence investigation report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. ***Commonwealth v. Ventura***, 975 A.2d 1128, 1135 (Pa. Super. 2009).

Moreover, the transcript of Appellant's sentencing hearing reveals the following:

> [The Court:]  The reality is [Appellant] was at the time a juvenile, but it does not excuse [Appellant]'s behavior.  It may be a little bit -- it may be somewhat of an explanation, but it certainly does not excuse it or justify it.
>
> The Court imposes sentence for the following reasons: [Appellant] presently is 28 years of age, which shows sufficient maturity to understand the significance of his acts.
>
> Again, I have already commented on the fact that at the time of the incident, [Appellant] was a juvenile.
>
> According to the pre-sentence investigation report, [Appellant] is intelligent enough to understand the significance of his acts and there is nothing in the pre-sentence investigation report to suggest that [he] did not understand what he was . . . doing at the time that these events took place.
>
> \*          \*          \*
>
> Again, many of the things set forth in the pre-sentence investigation report deal with things that have occurred and been accomplished by [Appellant] since these events, but they are of [little] significance in me evaluating and determining what the appropriate sentence should be.
>
> \*          \*          \*
>
> As noted in the pre-sentence investigation report, there is no prior juvenile record prior to these events taking place; however, there are adult criminal offenses since those times.

Now, they are not included for purposes of determining the sentencing guidelines, but it is appropriate that I take into consideration [Appellant]'s behavior as an adult because that does impact whether or not I think [he] is capable of rehabilitation and his overall conduct.

N.T., 7/12/17, at 14-16.

The sentencing transcript reflects the trial court's consideration of the sentencing standards enunciated in Section 9721(b), and mitigating factors such as Appellant's age at the time of the offenses. In sum, there is no support for Appellant's claim that his sentence was excessive and the trial court did not take into consideration certain mitigating factors. Accordingly, Appellant's discretionary aspects of sentencing claim does not entitle him to relief.

Judgment of sentence affirmed in part and vacated in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/11/2018

- 14 -