J-S68024-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEITH DEWAYNE PENNYBAKER | : | |
| | : | |
| | : | No. 671 WDA 2019 |
| APPEAL OF: PENNSYLVANIA STATE | : | |
| POLICE | : | |

Appeal from the Order Entered April 3, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0009324-2017

BEFORE: GANTMAN, P.J.E., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY LAZARUS, J.: **FILED JANUARY 27, 2020**

Pennsylvania State Police (PSP) appeals from the order, entered in the Court of Common Pleas of Allegheny County, denying its motion for clarification and/or reconsideration/motion to intervene following the court's April 24, 2018 order removing Keith DeWayne Pennybaker from the Pennsylvania Sexual Offender Registry (Registry). After our review, we quash.[1]

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Because we quash this appeal, we deny as moot the PSP's motion to supplement the record.

On April 8, 1997, Pennybaker entered a guilty plea to one count each of rape[2] and involuntary deviate sexual intercourse.[3]  He committed his offenses on September 8, 1995, prior to the date Megan's Law I[4] went into effect. While he was incarcerated, Megan's Law II[5] went into effect.   Pennybaker was released from incarceration in 2011; shortly thereafter, Pennybaker was notified that he was required to register for life as a Tier III offender under the Sex Offender Registration and Notification Act (SORNA).[6] *See* 42 Pa.C.S.A. §§ 9799.14(b), 9799.15(a)(3), (e)(3).

On July 19, 2017, the Pennsylvania Supreme Court issued its Opinion Announcing the Judgment of the Court in ***Commonwealth v. Muniz***, 164 A.3d 1189 (Pa. 2017), which found SORNA to be punitive in nature and held that retroactive application of the registration and reporting requirements of SORNA violated the ex post facto clauses of the United States and

---

[2] 18 Pa.C.S.A. § 3121.

[3] 18 Pa.C.S.A. § 3121(a)(1).

[4] 42 Pa.C.S.A § 9791 *et seq.*, Act of Oct. 24, 1995, P.L. 1079, No. 24, effective Oct. 24, 1995 (Spec. Sess. No.1).

[5] 42 Pa.C.S.A. § 9791, *et seq.*, Act of May 10, 2000, P.L. 74, No. 18, effective July 9, 2000.

[6] Act of Dec. 20, 2011, P.L. 446, No. 111, amended as 42 Pa.C.S.A. §§ 9799.10-9799.41.

Pennsylvania Constitutions. *Id.* at 1223. In response to *Muniz*, the legislature enacted Act 10 of 2018, 42 Pa.C.S.A. § 9799.51,[7]

On February 12, 2018, Pennybaker filed a motion for removal from the Registry. Here, Pennsybaker's offense occurred prior to the effective date of SORNA or any version of Megan's Law. On April 24, 2018, the trial court granted the motion and ordered Pennybaker removed from the Registry. *See* Order of Court, 4/24/18.

On August 31, 2018, PSP filed a motion for reconsideration and a motion to intervene, alleging that it was not served with notice of Pennybaker's motion (although the Commonwealth was served), and that "failure to serve PSP–let alone join PSP as an indispensable party–robbed this [c]ourt of subject

_____

[7] Act 10, 2018, Feb. 21, P.L. 27, No. 10, § 6, imd. effective, was reenacted at 2018, June 12, P.L. 140, No. 29, §, imd. effective (referred to collectively as "Act 10"). Essentially, Act 10 sought to eliminate the punitive effects of SORNA and return the law back to Megan's Law II, adding a mechanism for removal from the registry after 25 years. Act 10 structured two different tracks for sex offenders: **Subchapter H** applies to offenses committed after December 20, 2012, and provides that an offender may petition for removal from the registry and also allows some reporting requirements to be completed remotely; and **Subchapter I** applies to offenses committed between April 22, 1996 and December 20, 2012, requires offenders to register for periods of either 10 years or life (Sexually Violent Predators), and reduced the length of time from 15 or 25 years to 10 years, eliminated some offenses from registration and provides for a mechanism for removal of lifetime registration after 25 years. Our Supreme Court is currently considering whether Acts 10 and 29 are constitutional. *See Commonwealth v. Lacombe*, 35 MAP 2018 (Pa. 2018).

J-S68024-19

matter jurisdiction to rule on his [m]otion." Motion for Clarification and/or

Reconsideration, 8/13/18, at 7.[8]

_____

[8] In its motion, the PSP acknowledges, "because of [*Muniz*] . . . [Pennybaker] no longer had to register as a sex offender." *Id.* at 9. PSP alleges, however, that due to the enactment of Subchapters H and I of Act 10, "reporting requirements are again considered a collateral consequence of the conviction." *Id.* at 10. Further, PSP alleges that the fact that Pennybaker's offense occurred prior to the enactment of Megan's Law I is irrelevant. The PSP argues: Subchapter I of Act 10 applies to those "required to register with the Pennsylvania State Police under a former sexual offender registration law of this Commonwealth on or after April 22, 1996 but before December 20, 2012, whose period of registration has not expired." Supplement to Motion for Clarification and/or Reconsideration, 11/15/18, at 2. In support of this contention, PSP avers:

> Megan's Law I became effective [on] May 22, 1996, and required defendants convicted of rape to register for ten years as a sex offender. *See* former 42 Pa.C.S. § 9793(b). This ten-year registration applied "to all offenders convicted of an offense equivalent to an offense set forth in § 9793(b) before the effective date of this section who *remain[ed] incarcerated* or on parole on the effective date of this section." *See* former 42 Pa.C.S. § 9799.6 (emphasis added). [Pennybaker] was serving his sentence at the time that Megan's Law I became effective; therefore, Megan's Law I applied to him and he was required to register for ten years. *See Commonwealth v. Gaffney*, 733 A.2d 616, 617 (Pa. 1999) (finding no violation of any ex post facto provision in requiring registration when the acts underlying an individual's conviction occurred prior to the effective date of the registration requirements of Megan's Law I). Megan's Law II became effective on July 10, 2000, subjecting defendants convicted of rape to lifetime registration requirements. Specifically, Megan's Law II applied "to individuals incarcerated or convicted on or after the effective date of this act." *See* former 42 Pa.C.S. § 9791(2) (emphasis added). Therefore, because [Pennybaker] had not yet finished serving his registration requirements under Megan's Law II as of the effective date of Act 10 of 2018, he must continue as a lifetime registrant.

- 4 -

The question of timeliness of an appeal is jurisdictional. ***Commonwealth v. Moir***, 766 A.2d 1253, 1254 (Pa. Super. 2000). Time limitations on appeal periods are strictly construed and cannot be extended as a matter of grace. ***Commonwealth v. Perez***, 799 A.2d 848, 851 (Pa. Super. 2002); ***see also*** Pa.R.A.P. 105(b) (stating that, although appellate court may enlarge time prescribed in rules of appellate procedure for good cause shown, court may not enlarge time for filing notice of appeal).

In order to preserve the right to appeal a final order of the trial court, a notice of appeal must be filed within thirty days after the date of entry of that order. Pa.R.A.P. 903(a). Although the entry of a final order triggers the thirty-day appeal period, this period may be tolled if the trial court expressly grants a motion for reconsideration within the thirty-day period. Pa.R.A.P.

---

***Id.*** at 3 (emphasis in original).

Even if we were to reach the merits, we are not convinced by this argument. Subchapter I sets forth the registration requirements that apply to all offenders convicted of committing offenses on or after Megan's Law I's effective date (April 22, 1996), but prior to SORNA's effective date. ***See Commonwealth v. Bricker***, 198 A.3d 371, 375–76 (Pa. Super. 2018). Here, Pennybaker was convicted on April 8, 1997 for his 1995 offense. Retroactively applied registration requirements are unconstitutional under ***Muniz***. "Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed ***when the crime was consummated***." ***Muniz***, 164 A.3d at 1194 (quoting ***Weaver v. Graham***, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) (emphasis added). The "critical inquiry" is the "date of the offense." ***Commonwealth v. Lippincott***, 208 A.2d 143, 149 (Pa. Super. 2019) (en banc), *citing* ***Commonwealth v. Horning***, 193 A.3d 411, 417 (Pa. Super. 2018).

1701(b)(3). Although a party may file a motion for reconsideration pursuant to Rule 1701, a trial court's "[f]ailure to 'expressly' grant reconsideration within the time set by the rules for filing an appeal will cause the trial court to lose its power to act on the application for reconsideration." *Moir*, 766 A.2d at 1254. The mere filing of a motion for reconsideration is insufficient to toll the appeal period. *Moore v. Moore*, 634 A.2d 163, 167 (Pa. 1993). Rule 1701 is clear: the thirty-day appeal period is tolled only by a timely order "expressly granting" reconsideration; the establishment of a briefing schedule, hearing date, or issuance of a rule to show cause does not suffice. *Valley Forge Center Associates v. Rib–It, K.P., Inc.*, 693 A.2d 242, 245 (Pa. Super. 1997); *see Moir*, 766 A.2d at 1254 (holding trial court's action of granting rule to show cause and setting hearing date on motion for reconsideration was insufficient to toll appeal period). "Therefore, as the comment to Pa.R.A.P. 1701 explains, although a party may petition the court for reconsideration, the simultaneous filing of a notice of appeal is necessary to preserve appellate rights in the event that either the trial court fails to grant the petition expressly within 30 days, or it denies the petition." *Moir*, 766 A.2d at 1254; Pa.R.A.P. 1701, Cmt.

The appeal in this case should have been filed within thirty days from the April 24, 2018 order, or reconsideration should have expressly been granted within thirty days of that order. Neither event occurred. The court's April 24, 2018 order became final on May 24, 2018, when no appeal was filed and the court did not expressly grant reconsideration. As Pennybaker states

in his motion to quash, PSP attempts to remedy its failure to file a timely appeal by purporting to appeal from the trial court's order denying its motion for reconsideration and motion to intervene. **See** Motion to Quash, 6/12/19, at 9. An appeal from an order denying reconsideration is improper and untimely. **Moir**, **supra** at 1254; **Valentine v. Wroten**, 580 A.2d 757 (Pa. Super. 1990); **Fortune/Forsythe v. Fortune**, 508 A.2d 1205 (Pa. Super. 1986). Since the untimely filing of an appeal goes to the jurisdiction of this Court, we quash this appeal. Pa.R.A.P. 903(a); **Moir**, **supra**; **Valley Forge Center**, **supra**.

Appeal quashed.

Judge Pellegrini joins this Memorandum.

President Judge Emeritus Gantman concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/27/2020