J-S02015-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JOHN GRIFFITH :
:
Appellant : No. 1226 EDA 2021

Appeal from the PCRA Order Entered May 25, 2021
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0001754-2015

BEFORE: OLSON, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY OLSON, J.: **FILED NOVEMBER 30, 2022**

Appellant, John Griffith, appeals *pro se* from an order, entered on May
25, 2021 in the Criminal Division of the Court of Common Pleas of Lehigh
County, that dismissed, as an untimely petition for collateral relief under the
Post-Conviction Relief Act ("PCRA"),[1] Appellant's petition to vacate his
conviction and sentence for failure to comply with sexual offender registration
requirements. After careful review, we reverse the order entered on May 25,
2021 and vacate Appellant's conviction and sentence for failure to comply.

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

On March 6, 2000, Appellant pled guilty in the Court of Common Pleas of Northampton County to the attempted rape[2] and indecent assault[3] of his seven-year-old daughter and received a sentence of ten to 20 years' imprisonment. Trial Court Opinion, 7/28/21, at 1-2. Under then-effective Megan's Law I,[4] Appellant's indecent assault conviction triggered a ten-year sex offender registration requirement upon his release from prison.[5] Appellant

_____

[2] 18 Pa.C.S.A. §§ 901(a)(attempt), 3121 (rape).

[3] Per Appellant's publicly available docket sheets, Appellant pled guilty to two separate counts of indecent assault, 18 Pa.C.S.A. § 3126(a)(7), graded as a misdemeanor of the first degree, and 18 Pa.C.S.A. § 3126(a)(8), graded as a misdemeanor of the second degree. *See Solomon v. United States Healthcare Sys. of Pennsylvania, Inc.*, 797 A.2d 346, 352 (Pa. Super. 2002) (acknowledging authority to take judicial notice of the public docket in underlying conviction); *see also* Pa.R.E. 201(b)(2) (permitting courts to judicially notice a fact deriving from a source whose accuracy cannot reasonably be questioned).

[4] Act of Oct. 24, 1995, P.L. 1079 (Spec. Sess. No. 1), *as amended*, 42 Pa.C.S.A. §§ 9791-9799 ("Megan's Law I") (expired).

[5] Under Megan's Law I, only Appellant's first-degree indecent assault conviction under § 3126(a)(7) triggered sex offender registration. *See* 42 Pa.C.S.A. § 9793(b)(3). Inchoate crimes were not included as predicate offenses that triggered sex offender registration until July 10, 2000, the effective date of Megan's Law II. *See* 42 Pa.C.S.A. § 9795.1 (expired). Moreover, nothing in the record suggests Appellant was ever classified as a sexually violent predator ("SVP"). Consequently, as of the time of his sentencing in 2000, Appellant knew that the following conditions of sex offender registration applied to him for a period of ten years following his release from prison:

> Those offenders who are not classified as [SVPs] are subject to the registration requirements set forth at Section 9793. This provision requires that an offender register a current address with

*(Footnote Continued Next Page)*

was granted parole in 2010. *Id.* at 2. In the ensuing years, the General Assembly amended the sex offender registration statutes. Relevant to this appeal, on December 20, 2012, the Sexual Offender Registration and Notification Act ("SORNA I") took effect.[6] SORNA I reclassified Appellant's indecent assault conviction under 18 Pa.C.S.A. § 3126(a)(7) and his attempted rape conviction under 18 Pa.C.S.A. §§ 901(a) and 3121 as Tier III sexual offenses requiring lifetime registration.[7] *See* 42 Pa.C.S.A.

_____

> the Pennsylvania State Police [("PSP")] upon release from incarceration, being placed on parole, the commencement of a sentence of intermediate punishment or probation, or under the parole board's supervision. [PSP] must be notified of an offender's change of address and a current address must be registered. The period of registration under this provision is ten years and failure to comply with the provision is a felony of the third degree.

*Commonwealth v. Williams*, 733 A.2d 593, 595-596 (Pa. 1999) (*Williams I*), *construing* 42 Pa.C.S.A. § 9793. Pursuant to this provision, offenders such as Appellant needed to inform PSP of residential changes within ten days. 42 Pa.C.S.A. § 9793(a). These registration requirements and penalties for noncompliance were considered nonpunitive and remedial. *Commonwealth v. Gaffney*, 733 A.2d 616, 622 (Pa. 1999) (registration requirements); *Commonwealth v. Killinger*, 888 A.2d 592, 594 (Pa. 2005) (penalties).

[6] Act of Dec. 20, 2011, P.L. 446, No. 111 § 12, effective in one year or Dec. 20, 2012, *amended* Act of Jul. 5, 2012, P.L. 880 No. 91, effective Dec. 20, 2012, 42 Pa.C.S.A. §§ 9799.10-9799.41 ("SORNA I").

[7] SORNA I generally imposed upon sexual offenders more frequent and in-person reporting requirements and compelled the disclosure of more in-depth information which, in turn, was to be publicly disseminated online. *See generally Commonwealth v. Torsilieri*, 232 A.3d 567, 578-579 (Pa. 2020). For example, offenders such as Appellant needed to report residential changes in person and within three business days. 42 Pa.C.S.A. § 9799.15(g)(2) (effective Dec. 20, 2012 to Feb. 20, 2018). Moreover,
*(Footnote Continued Next Page)*

§§ 9799.14(d)(8), (d)(14) (classifying indecent assault under 18 Pa.C.S.A. § 3126(a)(7) and attempted rape as Tier III offenses, respectively); 42 Pa.C.S.A. § 9799.15(a)(3) (requiring lifetime registration for Tier III offenders) (effective Dec. 20. 2012 to Feb. 20, 2018).

Thereafter, on July 27, 2015, Appellant pled guilty in the Court of Common Pleas of Lehigh County to failure to comply with registration requirements enacted under SORNA I at 42 Pa.C.S.A. § 9799.15(g)(2),[8] graded as a felony of the second degree, for knowingly failing to report a change of residence between January 30, 2015 and February 17, 2015, when he moved from Allentown, Pennsylvania to Reading, Pennsylvania. ***See*** Criminal Information, 5/18/15; Negotiated Guilty Plea, 7/27/15. On August 31, 2015, the trial court imposed a sentence of 14 to 36 months' incarceration for this conviction.[9] Appellant filed no post-sentence motions or direct appeal,

_____

SORNA I deemed noncompliance with these reporting requirements as a felony of the second degree. 18 Pa.C.S.A. § 4915.1(c)(1).

[8] ***See*** 18 Pa.C.S.A. § 4915.1(a)(2) (effective Dec. 20, 2012 to Feb. 20, 2018). Section 4915.1(a)(2) provided that an individual who is subject to registration commits an offense if he knowingly fails to verify his address or be photographed as required.

[9] Appellant's conviction for failure to comply with registration requirements in Lehigh County constituted a parole violation that led to the revocation of his parole on his original Northampton County sentence. ***See*** Pennsylvania Board of Probation and Parole Recommitment Order, 12/11/15. Appellant's Northampton County proceedings are not the subject of any challenge within the context of this appeal.

- 4 -

thus his judgment of sentence became final on October 1, 2015. **See** Trial Court Opinion, 7/28/21, at 3; 42 Pa.C.S.A. § 9545(b)(3).

On July 19, 2017, our Supreme Court invalidated retroactive application of SORNA I's registration and notification provisions to offenders, like Appellant, who committed their predicate offenses prior to SORNA I's effective date, December 20, 2012. **Commonwealth v. Muniz**, 164 A.3d 1189, 1193 (Pa. 2017) (opinion announcing judgment of the court), *cert. denied sub nom.*, **Pennsylvania v. Muniz**, 138 S. Ct. 925 (2018). Specifically, the Court deemed punitive the provisions of SORNA I that "increased the length of registration, contain[ed] mandatory in-person reporting requirements, [] allow[ed] for more private information to be displayed online," and included "additional lesser-graded predicate offenses triggering registration" that did not necessarily contain a sexual component. **Id.** at 1215-1216, 1218. Because these "additional registration requirements constituted a greater punishment than what Megan's Law would have imposed," their retroactive application violated the federal and state *ex post facto* clauses.[10] **Commonwealth v. Horning**, 193 A.3d 411, 417 (Pa. Super. 2018), *construing* **Muniz**, 164 A.3d at 1193-1194, 1216.

_____

[10] While **Muniz** is not a majority opinion, it garnered precedential value to the extent the concurring jurists agreed that SORNA I is punitive and that its retroactive application violates both the state and federal *ex post facto* provisions. **See Commonwealth v. Wood**, 208 A.3d 131, 135 (Pa. Super. 2019) (*en banc*). The justices diverged on whether the state provision afforded greater protection than its federal counterpart. **See Muniz**, 164 A.3d at 757 (Wecht, J., concurring).

Shortly after our Supreme Court issued **Muniz**, Appellant filed petitions in Northampton County and Lehigh County challenging the validity of his duty to comply with sex offender registration and reporting requirements imposed under SORNA I.[11]  Relevant to the current appeal, Appellant filed a petition in Lehigh County on October 6, 2017, which he framed as a "writ of *habeas corpus ad subjiciendum*" (hereinafter "2017 petition").  Among other things, Appellant's petition alleged that his claims fell outside the PCRA.  In addition, Appellant asserted that, because **Muniz** declared SORNA I "invalid," no law authorized his conviction for failure to comply.  As such, Appellant viewed his detention for failure to comply as unlawful and demanded an immediate release from prison.  **See generally** 2017 Petition, 10/6/17.  The trial court appointed the Public Defender's Office to represent Appellant and ordered counsel to file either an amended PCRA petition on behalf of Appellant or a **Turner**/**Finley**[12] no-merit letter and motion to withdraw within 90 days of the

---

[11] Appellant's petition in Northampton County challenged the registration requirements applicable to his underlying predicate offenses.  Lehigh County stayed proceedings pending resolution of Appellant's Northampton County challenge.  On March 22, 2018, Northampton County dismissed Appellant's petition as an untimely collateral challenge to his original judgment of sentence entered in 2000.  Subsequently, this Court affirmed that dismissal order on November 30, 2018.  **See Commonwealth v. Griffith**, 2018 WL 6258939 (Pa. Super. 2018) (unpublished memorandum).

[12] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

order. *See* Trial Court Order, 4/11/18. Counsel did not comply with this directive.

Instead, on August 25, 2020, Appellant filed *pro se* a petition entitled "petition to enforce plea agreement/writ of *habeas corpus*" (hereinafter "2020 Petition"). Within his 2020 petition, Appellant reiterated the arguments from his 2017 petition. Additionally, Appellant argued that SORNA I's "expiration provision" validly repealed all prior sex offender registration statutes; thus, Appellant was no longer subject to any registration requirements. *See* 2020 Petition, 8/25/20, at 3, 5-6. Lastly, he claimed that, because SORNA I was deemed an unconstitutional law, the *Muniz* decision rendered his plea for failure to comply with registration requirements invalid, void *ab initio*, and a violation of myriad provisions of the United States and Pennsylvania Constitutions. *Id.* at 6-15.

Eventually, counsel filed a *Turner*/*Finley* brief and motion to withdraw on the basis that Appellant's petitions constituted untimely requests for collateral relief that were not subject to a timeliness exception. *Turner*/*Finley* Brief at 9-10. Counsel's motion to withdraw also alleged that, even if Appellant's request to enforce his plea agreement fell outside the ambit of the PCRA, Appellant needed to litigate that issue in Northampton County, not Lehigh County. *See id*. *Turner*/*Finley* Brief at 9-10. In the wake of counsel's submission, the trial court issued a Rule 907 notice of its intent to

dismiss, to which Appellant did not respond.[13]  Ultimately, the court treated Appellant's petition as asserting claims for collateral relief under the PCRA and, for this reason, dismissed those claims as untimely and granted counsel's motion to withdraw.  This appeal followed.[14]

At the outset, before we can address Appellant's issues raised on appeal,[15] we must determine whether the trial court properly construed Appellant's petitions under the PCRA, as this implicates our jurisdiction.

Recently, our Supreme Court determined that neither "the PCRA [nor] any other procedural mechanism, is the exclusive method for challenging sexual offender registration statutes[.]"[16] *Commonwealth v. Lacombe*, 234 A.3d 602, 618 (Pa. 2020); *accord Commonwealth v. Moose*, 245 A.3d

_____

[13] The record shows that the trial court convened a hearing on March 16, 2021; however, no notes of testimony reflect what transpired at the March 2021 hearing, including whether Appellant addressed counsel's *Turner*/*Finley* motion or the trial court's Rule 907 notice.

[14] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

[15] Appellant inarticulately raised 26 "issues" which intermix various claims in an incoherent fashion.  Generally, he contests his obligation to register as a sex offender together with his conviction for failure to comply with registration requirements.  In raising these claims, Appellant relies heavily on his reading of *Muniz*.

[16] The *Lacombe* Court reasoned that an offender's registration requirements change frequently and may apply retroactively.  *Lacombe*, 234 A.3d at 618. Thus, "the strict jurisdictional requirements of the PCRA render it unsuitable, because many registrants will be ineligible for relief on timeliness grounds or because their criminal sentence has expired while their registration requirements continue."  *Commonwealth v. Smith*, 240 A.3d 654, 658 (Pa. Super. 2020).

1121, 1129 n.6 (Pa. Super. 2021) (*en banc*) (overruling prior holdings requiring petitioners to challenge sex offender registration requirements within a timely PCRA petition). Our Supreme Court has also determined that a challenge to a conviction for failure to comply necessarily requires an evaluation of the conditions of registration applicable to the petitioner. ***See Commonwealth v. Santana***, 266 A.3d 528, 539 n.49 (Pa. 2021) (explaining that it is not the failure to comply conviction that is being retroactively applied, but rather the conditions of registration the offender is accused of violating, because "if he did not have to register [ ] then he could not have committed the crime."); ***see also Commonwealth v. Butler***, 226 A.2d 972, 990 (Pa. 2020) ("***Butler II***") (explaining that, for violations for noncompliance with SORNA I's registration requirements, "but for the original underlying offense," an individual would not be "subject to the mandatory conditions from which the potential violation stems."). Thus, where, as here, a petitioner alleges that his failure to comply conviction stemmed from a violation of conditions unlawfully imposed upon him, ***Lacombe*** controls, and the claim may be addressed outside the strict confines of the PCRA as an indirect challenge to the underlying registration requirements.

Appellant's central claim on appeal is that his conviction and sentence for failure to comply cannot be sustained because they rest upon a retroactive application of the punitive notification and registration provisions of SORNA I

in violation of the *ex post facto* clause of the United States Constitution.[17] "[A] conviction based on an unconstitutional statute is a nullity." ***Commonwealth v. Derhammer***, 173 A.3d 723, 728 (Pa. 2017). Moreover, "an offense created by an unconstitutional law is not a crime and a conviction under it is illegal and void and cannot be a legal cause of imprisonment." ***Id.*** We therefore review the relevant constitutional principles.

Appellate courts in Pennsylvania recognize that there is a general presumption that all lawfully enacted statutes are constitutional. ***Commonwealth v. Lee***, 935 A.2d 865, 876 (Pa. 2007). Moreover, as this case presents questions of law, our scope of review is plenary and we undertake *de novo* review of the pertinent legal determinations.

Our Supreme Court has observed that "[t]he central concern in incorporating *ex post facto* clauses in both federal and state constitutions was to assure that federal and state legislatures were restrained from enacting arbitrary or vindictive legislation following the American Revolution." ***Muniz***, 164 A.3d at 1195 (citations and internal quotations omitted). "The clauses were [also incorporated to ensure] that individuals [receive] "fair warning" about what constitutes criminal conduct, and what the punishments for that conduct entail." ***Id.*** A statutory provision such as SORNA I is deemed violative of the *ex post facto* clause if it is applied retroactively to an offender

_____

[17] The United States Constitution provides: "No State shall ... pass any ... ex post facto Law[.]" U.S. CONST. art I § 10.

(in that it is applied to events that occurred before the enactment of the legislation) **and** where its application is punitive (in that it inflicts a greater punishment on the sexual offender to whom it is applied than the law in effect when he commits his crimes). *See id*. at 1196 and 1208.

As noted above, our Supreme Court previously determined in *Muniz* that SORNA I is punitive when its registration and notification provisions are applied retroactively. *See Muniz*, 164 A.3d at 1193; *see also Santana*, 266 A.3d at 538 ("[The Pennsylvania Supreme Court ruled] in *Muniz* that [SORNA I's registration and notification requirements] are punitive in nature."); *Commonwealth v. Wood*, 208 A.3d 131, 135 (Pa. Super. 2019) (*en banc*) ("The *Muniz* Court reasoned that despite the legislature's designation of SORNA [I] as a civil remedy, it was punitive in nature[.]"). Because our Supreme Court has resolved the issue of whether SORNA I is punitive when applied to Tier III sex offenders such as Appellant, we focus the balance of our analysis on whether SORNA was applied retroactively under the present facts.

Retroactive application of SORNA I's punitive registration and notification provisions is unconstitutional under *Muniz*. *See Wood*, 208 A.3d at 140. In *Wood*, this Court observed:

> *Muniz* identified the four types of laws that deny the protections that the ex post facto prohibitions seek to afford: (1) Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action; (2) Every law that aggravates a crime, or makes it greater than it was, when committed; (3) Every law that changes the

- 11 -

punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed; and (4) Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender.

*Wood*, 208 A.3d at 135, *citing* *Muniz*, 164 A.3d at 1195 (relying upon *Calder v. Bull*, 3 U.S. 386, 390 (1789) as the source for the four categories of *ex post facto* laws). Sexual offender registration laws such as SORNA I implicate the third *Calder* category because their application imposes greater punishment on offenders than the law in effect when the crime was committed. *See Santana*, 266 A.3d at 537. To determine whether such laws entail retroactive application, courts must determine when the relevant, initial triggering offense was committed and then, whether the challenged law was thereafter enacted. *Id.* If the challenged law were enacted after the relevant offense was committed, retroactive application has been established. In *Wood*, this Court held that, for purposes of an *ex post facto* analysis, it is SORNA I's effective date (December 20, 2012), not its enactment date, which is determinative. Thus, if Appellant committed the relevant triggering offense before December 20, 2012, then SORNA I's application in this case was retroactive.

According to the certified record, Appellant sexually assaulted his daughter no later than 2000. SORNA I became effective in 2012. In 2015, while on parole, Appellant relocated but failed to report the change in his residential address, as SORNA I required him to do. Appellant later pled guilty

to failure to comply based upon his conduct in 2015. While Appellant's 2015 conduct led to the conviction and sentence challenged in this appeal, we conclude, for the following reasons, that it is Appellant's pre-SORNA I conduct in 2000 which serves as the initial, triggering offense for purposes of our *ex post facto* analysis. Thus, SORNA I was impermissibly applied in a retroactive fashion.

Our Supreme Court addressed very similar circumstances in ***Santana, supra***. In that case, Santana committed a rape in 1983 in New York. In 2015, after SORNA I's 2012 enactment, he moved to Pennsylvania but failed to furnish adequate information regarding his new residential address, as he was required to do under SORNA I. Santana was then charged with failure to register as a sex offender and entered a guilty plea. When the trial court rejected Santana's request to withdraw the plea, he appealed. On appeal, our Supreme Court concluded that the 1983 rape was the relevant criminal conduct by which to determine whether SORNA I had been applied in a retroactive manner since that conduct, not Santana's 2015 failure to register, was what triggered his putative duty to register under SORNA I. In rejecting the dissenting position advocated by the late Chief Justice Baer, which asserted that SORNA I's application to Santana did not involve retroactive application since Santana failed to register as a sex offender after SORNA I's effective date, the ***Santana*** Court explained:

> Chief Justice Baer (joined by Justice Mundy) finds ***Muniz*** distinguishable and discerns no *ex post facto* problem in this case.

But the Chief Justice does so by selecting the incorrect offense as his focus. As the pertinent *ex post facto* decisions from both the United States Supreme Court and this Court make abundantly clear, the date that first must be ascertained is the date of the offense that subjected the offender to the challenged law. For purposes of assessing retroactive application of sexual offender laws, the inquiry begins by determining when the offense occurred that triggered the challenged statutory scheme. Here, that statutory scheme is SORNA [I]. Santana is not asserting that [18 Pa.C.S.A. § 4915] is unconstitutional. He is asking this Court to determine whether the statutory scheme that required him to register at all – [SORNA I] - could not constitutionally require him to do so. After ***Muniz***, the answer appears indisputable.

Chief Justice Baer would look instead to the date that Santana committed his failure-to-report offense, which occurred a number of years after SORNA was enacted. This misaligned focus legally is erroneous and contravenes the clear principles of ***Calder*** and ***Muniz***. It also misapprehends the basis for Santana's motion to withdraw his plea. Santana was required to comply with SORNA [I] because, in 1983, he committed a rape, not because he failed to comply with [SORNA I's] terms at a later point in time. In other words, Santana only was required to register because of the 1983 rape, which occurred before SORNA [I] was enacted. And if SORNA [I] is unconstitutional when applied retroactively, as we held in ***Muniz***, then Santana never was required to register in the first place. Thus, this case is not distinguishable from ***Muniz***, as both appeals have asked the fundamental question of whether our Constitutions permit [SORNA I's] requirements to apply to crimes that occurred before its enactment. That Santana was convicted of failing to comply with those requirements is entirely beside the point, and has no bearing on the legal question presented to this Court. Any comparison that involves the date of the failure-to-report offense is entirely irrelevant to the *ex post facto* analysis.

***Santana***, 266 A.3d at 542 n.45.

Here, Appellant committed a sexual assault and an attempted rape in 2000. The legislature expressly stated that SORNA I became effective on December 20, 2012. ***See Commonwealth v. Martinez***, 147 A.3d 517, 522

- 14 -

(Pa. 2016). Thus, Appellant committed his crimes years before SORNA I's effective date. Based upon the foregoing analysis, and our Supreme Court's decision in *Muniz*, we agree that retroactive application of SORNA I's registration and reporting requirements in this case violated the prohibition against *ex post facto* laws, as it inflicted a greater punishment upon Appellant than the law in effect at the time he committed his initial crimes. Accordingly, we reverse the order entered on May 25, 2021 and vacate Appellant's conviction and sentence for failure to comply.[18, 19]

_____

[18] Although we have applied our Supreme Court's decision in *Muniz*, we hasten to add that our ruling does not terminate Appellant's obligation to comply with prevailing sex offender registration and reporting requirements. After *Muniz*, the General Assembly enacted SORNA II. *See* 42 Pa.C.S. § 9799.51(b)(4). Since sex offender registration requirements "evolve pursuant to the legislative decisions of our General Assembly, registrants must comply with **current** law." *See*, *Smith*, 240 A.3d at 657 (emphasis in original). Thus, if Appellant meets the criteria for registration under SORNA II, he will be subject to registration under that statute notwithstanding the relief awarded in this appeal.

[19] In view of our decision to vacate Appellant's 2015 conviction and sentence for failure to comply, we also conclude that Appellant is entitled to relief from the order entered in Northampton County that revoked his parole, and imposed a related back-time sentence, since that determination flowed from Appellant's failure to comply conviction. *See Wood*, 208 A.3d at 140 (vacating probation revocation order, together with related judgment of sentence, after concluding that Wood's conviction for failure to comply with registration requirements under SORNA I violated *ex post facto* principles announced in *Muniz*). Since no order from Northampton County has been challenged within the context of this appeal, we leave it to Appellant to pursue relief in his parole revocation matter before the Court of Common Pleas of Northampton County. We encourage the court in Lehigh County to carefully consider any request for the assistance of counsel made on Appellant's behalf for purposes of seeking relief in Northampton County.

May 25, 2021 order reversed. Conviction and judgment of sentence for failure to comply vacated.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/30/2022