J. S31038/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| R.L.J., JR., | : | No. 2003 MDA 2019 |
| | : | |
| Appellant | : | |

Appeal from the PCRA Order Entered November 12, 2019,
in the Court of Common Pleas of Lancaster County
Criminal Division at No. CP-36-CR-0000848-2015

BEFORE:  BOWES, J., DUBOW, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED OCTOBER 02, 2020**

R.L.J., Jr. (hereinafter, "appellant"), appeals from the November 12, 2019 order denying, in part, and granting, in part,[1] his amended petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  After careful review, we affirm.

The factual history of this case is not pertinent to our disposition and need not be reiterated here.  On January 27, 2016, a jury found appellant guilty of rape of a child, two counts of involuntary deviate sexual intercourse with a child, unlawful contact with a minor, corruption of minors, incest, and

---

[1] The PCRA court granted appellant relief with respect to his claim that the lifetime registration requirements under SORNA were illegal.  (**See** PCRA court order, 11/13/19 at ¶ 2; PCRA court opinion, 11/12/19 at 22-37.)   The registration requirements are not a subject of the instant appeal.

indecent assault of a child less than 13 years of age.[2] These convictions stemmed from appellant's repeated sexual assault of his minor daughter, who was under the age of 13 at the time. Following a Sexual Offender Assessment Board Evaluation, the trial court determined that appellant did not meet the criteria to be classified a sexually violent predator. On May 10, 2016, the trial court sentenced appellant to an aggregate term of 31 to 70 years' imprisonment. In addition to his term of incarceration, appellant was required to become a lifetime registrant under the Sexual Registration and Notification Act ("SORNA"), 42 Pa.C.S.A. § 9799.10 *et. seq*. Appellant filed post-sentence motions for reconsideration of his sentence, which were granted by the trial court on August 5, 2016. That same day, the trial court resentenced appellant to an aggregate judgment of sentence of 22 to 50 years' imprisonment. The registration requirements imposed by SORNA remained in place. On April 12, 2017, a panel of this court affirmed appellant's judgment of sentence, and our supreme court denied appellant's petition for allowance of appeal on September 19, 2017. *See Commonwealth v. Jusino*, 169 A.3d 1159 (Pa.Super. 2017), *appeal denied*, 170 A.3d 1058 (Pa. 2017).

The remaining procedural history of this case, as gleaned from the PCRA court opinion, is as follows:

> On October 30, 2017, [appellant] filed a *pro se* Motion for Reconsideration of Sentence, which the court deemed as a timely, initial petition seeking relief

---

[2] 18 Pa.C.S.A. §§ 3121(c), 3125(b), 6318(a)(1), 6301(a)(1)(ii), 4302(b)(1), and 3126(a)(7), respectively.

under the [PCRA]. Additionally, by order of the same date, the court granted [appellant] leave to proceed *in forma pauperis*; appointed Dennis C. Dougherty, Esquire, as counsel for [appellant]; granted counsel sixty days to file either an amended post-conviction motion or provide notice that no such amended motion would be filed; and, directed the attorney for the Commonwealth to file an answer within thirty days thereafter. On December 28, 2017, counsel for [appellant] filed a Motion for Extension of Time to file an amended [PCRA] petition, which was granted by order of the same date. Thereafter, on March 2, 2018, counsel filed an Amended PCRA Petition alleging that [appellant's] trial counsel was ineffective when he failed, at trial, to prevent the introduction of evidence regarding [appellant's] prior police contacts and opinion evidence offered by Detective Gareth Lowe as to [appellant's] veracity in his denial of the allegations. The Amended PCRA petition also alleges that [appellant] should not be required to register as a sex offender under SORNA as the crimes for which he was convicted occurred prior to December 20, 2012.

. . . .

By order dated April 25, 2018, the court scheduled an evidentiary hearing relative to [appellant's] Amended PCRA Petition. Following a change in date, the hearing was conducted before the court on August 3, 2018. On the same date, by agreement of the parties, the court scheduled a supplemental PCRA hearing for October 18, 2018. Subsequently, by agreement of the parties, the supplemental hearing was canceled, and the court established a briefing schedule by an order dated October 16, 2018.

. . . .

Thereafter, on June 19, 2019, the [PCRA c]ourt ordered counsel for the parties to submit supplemental written memoranda regarding the applicability of . . . *Commonwealth v. Alston*, 212 A.3d 526 (Pa.Super. 2019) (holding the defendant's

- 3 -

> SVP designation by clear and convincing evidence violated the state and federal constitutions and that the defendant was entitled to the lowest punishment under SORNA where his offenses straddled the operative dates between statutes governing sexual offender registration and continued registration of sexual offenders, and the jury did not specifically find dates of the offenses). The Commonwealth filed its memorandum on July 22, 2019, acknowledging that the present case is analogous to **Alston**, and contending that the court should, therefore, impose the lesser sex offender registration and notification requirements under subchapter I of Act 29 of 2018.

PCRA court opinion, 11/12/19 at 3-5 (footnotes omitted).

On November 12, 2019, the PCRA court entered an opinion and order denying appellant relief with respect to his ineffective assistance of counsel claims but granted him relief with respect to his claim under the registration requirements.[3] As noted, the registration requirements are not a subject of the instant appeal. This timely appeal followed on December 12, 2019. On December 13, 2019, the PCRA court ordered appellant to file a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b). Appellant filed a timely Rule 1925(b) statement on January 2, 2020. On January 3, 2020, the PCRA court entered an order indicating that it was relying on the reasoning set forth in its November 12, 2019 opinion and that no further Rule 1925(a) opinion would be forthcoming.

Appellant raises the following issues for our review:

---

[3] The PCRA court concluded that appellant is subject to Megan's Law II and required to register for his lifetime based on the underlying offenses.

I. [Whether] the PCRA court err[ed] when it found trial counsel[4] was not ineffective when [trial] counsel sought and did not object to the introduction of [appellant's] prior arrests[?]

II. [Whether] the PCRA court erred when it found trial counsel was not ineffective when counsel sought [Lancaster City Police Detective Gareth Lowe's] opinion testimony as to whether [appellant] was lying when he denied the accusations against him[?]

Appellant's brief at 9, 15 (full capitalization omitted).

Proper appellate review of a PCRA court's dismissal of a PCRA petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa.Super. 2014) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa.Super. 2014) (citations omitted). In order to be eligible for PCRA relief, a petitioner must plead and prove by a preponderance of the evidence that her conviction or sentence arose from one or more of the errors listed at 42 Pa.C.S.A. § 9543(a)(2). Further, these issues must be neither previously litigated nor waived. 42 Pa.C.S.A. § 9543(a)(3).

Both of appellant's claims concern the ineffectiveness of his trial counsel. To prevail on a claim of ineffective assistance of counsel under the

_____

4 Appellant was represented during his trial by Ronald Gross, Esq. ("trial counsel").

- 5 -

PCRA, a petitioner must plead and prove by a preponderance of the evidence that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). We apply a three-pronged test for determining whether trial counsel was ineffective, derived from the test articulated by the Supreme Court of the United States in **Strickland v. Washington**, 466 U.S. 668, 687 (1984), and as applied in **Commonwealth v. Pierce**, 527 A.2d 973 (Pa. 1987). **Commonwealth v. Simpson**, 66 A.3d 253, 260 (Pa. 2013).

> The **Pierce** test requires a PCRA petitioner to prove: (1) the underlying legal claim was of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and (3) the petitioner was prejudiced—that is, but for counsel's deficient stewardship, there is a reasonable likelihood the outcome of the proceedings would have been different.

**Id.**, citing **Pierce**, 527 A.2d at 975.

This court has explained that a petitioner "must meet all three prongs of the test for ineffectiveness[.]" **Commonwealth v. Charleston**, 94 A.3d 1012, 1020 (Pa.Super. 2014) (citation and internal quotation marks omitted), **appeal denied**, 104 A.3d 523 (Pa. 2014). "[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." **Commonwealth v. Ousley**, 21 A.3d 1238, 1242 (Pa.Super. 2011) (citation omitted), **appeal denied**, 30 A.3d 487 (Pa. 2011). Additionally, we note that counsel cannot be found ineffective for failing to raise a claim that is devoid of merit. **See Commonwealth v. Ligons**, 971 A.2d 1125, 1146 (Pa. 2009).

Following a thorough review of the record, including the briefs of the parties, the applicable law, and the well-reasoned opinion of the PCRA court, it is our determination that appellant's claims warrant no relief. The PCRA court authored a comprehensive, 39-page opinion wherein it devoted 14 pages to discussing both of appellant's ineffectiveness claims and concluding that they are without arguable merit. We find that the PCRA court's conclusions are supported by competent evidence and are clearly free of legal error. Specifically, we agree with the PCRA court that trial counsel was not ineffective in failing to object to references to the fact that appellant had previously been arrested, which were on the nearly 10-hour video recording of appellant's interrogation that the Commonwealth played for the jury. (PCRA court opinion, 11/12/19 at 9.) As the PCRA court found, trial counsel "credibly testified" that his chosen defense strategy was to demonstrate to the jury that appellant was subject to an unfair and biased interrogation that resulted in an involuntary and unreliable videotaped confession, and objecting would have undercut his argument. (*Id.* at 10-12.) Moreover, we agree with the PCRA court that any prejudice appellant suffered from reference to his prior arrests was cured by the trial court's cautionary instruction to the jury. (*Id.* at 14-15.)

Likewise, we agree with the PCRA court that trial counsel was not ineffective for questioning Detective Lowe on his opinion of appellant's veracity during the recorded statement. (*Id.* at 16.) As explained by the

PCRA court, although this testimony was prejudicial in nature, trial counsel's testimony at the evidentiary hearing revealed that the solicitation of this opinion testimony from Detective Lowe "was consistent with his chosen defense strategy." (*Id.* at 17.) The PCRA court explained:

> [Trial] counsel diligently strived to convince the jury that [appellant's] statement was given involuntarily, and his goal was to demonstrate that [Detective Lowe] had prematurely and unfairly formed an opinion as to [appellant's] guilt before questioning him. As such, [Detective Lowe] became biased and fixated on [appellant] to the exclusion of all others. Such bias controlled the manner of the interrogation and led to [Detective Lowe's] browbeating [appellant] into the damaging admissions[,] which were offered near the end of the extensive interview. [Trial c]ounsel took the position that [Detective Lowe] was unwilling to terminate the interrogation until he heard what he wanted to hear. Again, counsel repeatedly introduced evidence and offered such argument throughout the entire trial. The fact that such strategy was ultimately unsuccessful is of no import absent any indication that another strategy offered a significantly greater chance of success.

*Id.* at 17 (citation to notes of testimony omitted).

Based on the foregoing, we adopt the relevant portions of the PCRA court's comprehensive opinion as our own for purposes of this appellate review, and affirm its November 12, 2019 order denying, in part, appellant's amended PCRA petition.

J. S31038/20

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/2/2020

- 9 -



# IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
## CRIMINAL

COMMONWEALTH OF PENNSYLVANIA    :
                                   :

               vs.               :          No. 0848 - 2015

                                     :

R██████ L███ J███████, JR.      :

## OPINION AND ORDER

Pending before the court is the amended petition for post-conviction relief filed by Defendant, R███ L███ J█████, Jr., on March 2, 2018. For the reasons set out below, the petition will be granted in part and denied in part.

## PROCEDURAL AND FACTUAL BACKGROUND

By Criminal Information docketed to Number CP-36-CR-0000848-2015, Defendant was charged with allegedly having committed the offenses of Rape of a Child[1], two counts of Involuntary Deviate Sexual Intercourse[2], Unlawful Contact with Minor[3], Corruption of Minors[4], Incest[5], Indecent Assault[6], and Indecent Exposure[7]. Said charges resulted from alleged incidents involving Defendant's minor daughter, who was under the age of thirteen. Although the Commonwealth contended that said course of conduct stretched from December 1, 2012 through October 14, 2014, the Commonwealth has conceded that there was no specific finding by the jury in this matter as to when the offenses occurred. (Commonwealth Memorandum, July 22, 2019).

Following a jury trial conducted before the Honorable James P. Cullen, Defendant, who was represented by counsel[8], was convicted of the offenses of Rape, two counts of Involuntary

---

1 18 Pa.C.S.A.§ 3121(c).
2 18 Pa.C.S.A.§3123(b).
3 18 Pa.C.S.A.§6318(a)(1).
4 18 Pa.C.S.A.§6301(a)(1)(ii).
5 18 Pa.C.S.A.§4302(b)(1).
6 18 Pa.C.S.A.§3126(a)(7).
7 18 Pa.C.S.A.§3127(a).
8 Defendant was represented at trial by Attorney Ronald Gross.

Deviate Sexual Intercourse, Unlawful Contact with Minor, Corruption of Minors, Incest, and Indecent Assault. The remaining charge was nolle prossed by the Commonwealth at the time of sentencing.[9] On May 10, 2016, Defendant was sentenced to an aggregate term of not less than thirty-one nor more than seventy years incarceration. At sentencing, it was noted that the Sexual Offenders Assessment Board determined that Defendant did not meet the criteria to be deemed a sexually violent predator. In addition to his term of incarceration, Defendant was required to become a lifetime registrant under the Sexual Offender Registration and Notification Act (hereinafter, "SORNA")[10].

On May 20, 2016, Defendant, through trial counsel, filed a timely post-sentence motion in the nature of a Motion to Reconsider Sentence and trial counsel filed a simultaneous Motion to Withdraw as Counsel. By order filed on June 1, 2016, Attorney Vincent J. Quinn was appointed as appellate counsel for Defendant and Attorney Gross was permitted to withdraw as counsel. Additionally, by order filed on June 1, 2016, the court directed the attorney for the Commonwealth file an answer to Defendant's post-sentence motion. On June 6, 2016, newly appointed counsel for Defendant filed a motion seeking to amend Defendant's post-sentence motion. By order of the same date, the court directed the attorney for the Commonwealth to file an answer to said

---

9 It is noted that the sentencing sheet completed at the time of sentencing on May 10, 2016 incorrectly indicates that the charge of Indecent Assault had been nolle prossed. Defendant was found guilty of said charge; however, the court deemed the charge to merge for sentencing purposes.
10 42 Pa.C.S.A.§ 9799.10 et. seq..

2

motion. Following the filing of such answer by the attorney for the Commonwealth, the court granted Defendant's request to file an amended post-sentence motion by order dated June 24, 2016. On July 12, 2016, Defendant filed an Amended Motion to Reconsider Sentence. By order of the same date, the court directed the attorney for the Commonwealth to file an answer to such amended post-sentence motion, which the Commonwealth filed on July 21, 2016. By order filed on August 5, 2016, the court modified Defendant's sentence to reflect an aggregate sentence of not less than twenty-two years nor more than fifty years incarceration. The registration requirements imposed by the Sexual Offender Notification and Registration Act remained.

On August 12, 2016, Defendant filed a timely Notice of Appeal to the Superior Court of Pennsylvania. By Memorandum Opinion and Order dated April 12, 2017 the Superior Court of Pennsylvania affirmed Defendant's conviction and sentence. By Order dated September 19, 2017, the Pennsylvania Supreme Court denied Defendant's Petition for Allowance of Appeal.

On October 30, 2017, Defendant filed a *pro se* Motion for Reconsideration of Sentence, which the court deemed as a timely, initial petition seeking relief under the Post-Conviction Relief Act (hereinafter "PCRA"). Additionally, by order of the same date, the court granted Defendant leave to proceed *in forma pauperis*; appointed Dennis C. Dougherty, Esquire, as counsel for Defendant; granted counsel sixty days to file either an amended post-conviction motion or provide notice that no such amended motion would be filed; and, directed the attorney for the Commonwealth to file an answer within thirty days thereafter. On December 28, 2017, counsel

3

for Defendant filed a Motion for Extension of Time to file an amended post-conviction petition, which was granted by order of the same date. Thereafter, on March 2, 2018, counsel filed an Amended PCRA Petition alleging that Defendant's trial counsel[11] was ineffective when he failed, at trial, to prevent the introduction of evidence regarding Defendant's prior police contacts and opinion evidence offered by Detective Gareth Lowe as to Defendant's veracity in his denial of the allegations. The Amended PCRA petition also alleges that Defendant should not be required to register as a sex offender under SORNA as the crimes for which he was convicted occurred prior to December 20, 2012. On March 28, 2018, the attorney for the Commonwealth filed a motion seeking an extension of time in which to respond to Defendant's Amended PCRA Petition. Said request was granted on the same day by order of President Judge Dennis E. Reinaker. [12] On April 23, 2018, the attorney for the Commonwealth filed such response.

By order dated April 25, 2018, the court scheduled an evidentiary hearing relative to Defendant's Amended PCRA Petition. Following a change in date, the hearing was conducted before the court on August 3, 2018. On the same date, by agreement of the parties, the court scheduled a supplemental PCRA hearing for October 18, 2018. Subsequently, by agreement of

---

11 PCRA Counsel originally listed trial counsel in the Amended PCRA as Attorney Jay Whittle, as he was the attorney of record. At the beginning of the PCRA hearing conducted on August 3, 2018, PCRA counsel orally moved to amend the petition to correctly reflect Attorney Gross as the trial counsel.
12 By order of President Judge Dennis E. Reinaker dated April 4, 2018, the instant matter was administratively reassigned to the undersigned for further disposition.

4

the parties, the supplemental hearing was canceled, and the court established a briefing schedule by an order dated October 16, 2018. On November 14, 2018, counsel for the Defendant filed a motion seeking additional time to file Defendant's brief, which was granted by order of the same date. Defendant filed his brief in support of the requested relief on December 13, 2018. On January 10, 2019, the attorney for the Commonwealth filed a motion seeking additional time to file the Commonwealth's brief, which was granted by order of the same date. On February 7, 2019, the attorney for the Commonwealth filed a second motion seeking additional time to file the Commonwealth's brief, which was granted by order of the same date. On March 26, 2019, the Commonwealth filed its responsive brief.

Thereafter, on June 19, 2019, the Court ordered counsel for the parties to submit supplemental written memoranda regarding the applicability of the decision of the Superior Court of Pennsylvania in Commonwealth v. Alston, 212 A.3d 526 (Pa. Super. 2019) (holding the defendant's SVP designation by clear and convincing evidence violated the state and federal constitutions and that the defendant was entitled to the lowest punishment under SORNA where his offenses straddled the operative dates between statutes governing sexual offender registration and continued registration of sexual offenders, and the jury did not specifically find dates of the offenses). The Commonwealth filed its memorandum on July 22, 2019, acknowledging that the present case is analogous to Alston, and contending that the court should, therefore, impose the lesser sex offender registration and notification requirements under subchapter I of Act 29 of 2018.

5

Defendant filed his memorandum on August 2, 2019.

The matter is now ripe for resolution.

## DISCUSSION

In order to be eligible for relief under the Post-Conviction Relief Act ("PCRA")[13], a defendant must satisfy the requirements of 42 Pa. C.S. § 9543 which provide in pertinent part:

> (a) General rule. –To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following:
>
> (1) That the petitioner has been convicted of a crime under the laws of the Commonwealth and is at the time relief is granted:
>> (i) currently serving a sentence of imprisonment, probation, or parole for the crime;
>
> . . .
>
> (2) That the conviction or sentence resulted from one or more of the following:
>> (i) A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermine the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.
>>
>> (ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.
>
> . . .
>
> (4) That the failure to litigate the issue prior to or during trial, during unitary review or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel.

42 Pa. C.S. § 9543(a).

---

13.   42 Pa. C.S §§ 9541-9546.

6

The defendant bears the burden of establishing by a preponderance of the evidence that his conviction resulted from one or more of the errors enumerated in the PCRA. Commonwealth v. Fears, 86 A.3d 795, 803 (Pa. 2014).

## INEFFECTIVE ASSISTANCE OF COUNSEL

The law presumes counsel is effective and the burden of proving ineffectiveness is on the defendant. Fears, 86 A.3d at 804 (citations omitted). To obtain relief, the petitioner must demonstrate that counsel's performance was deficient and that deficiency prejudiced the petitioner. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068; Commonwealth v. Mallory, 941 A.2d 686, 704 (Pa. 2008). In order to show that counsel was ineffective, a petitioner must show by a preponderance of the evidence that his claim is of arguable merit, that counsel had no reasonable basis for the act or omission in question, and that counsel's ineffectiveness prejudiced the petitioner. Fears, 86 A.3d at 804 (citations omitted); 42 Pa. C.S. § 9543(a)(2)(ii). "Failure to prove any prong of this test will defeat an ineffectiveness claim." Fears, 86 A.3d at 804.

In evaluating a properly presented claim of ineffective assistance of counsel, a reviewing court will examine the basis for counsel's actions only if it is first persuaded that the claim of ineffectiveness has arguable merit. Commonwealth v. Pursell, 724 A.2d 293, 304 (Pa. 1999). If

7

the claim is without merit, the inquiry ends as counsel will not be deemed ineffective for failing to pursue a meritless, baseless or frivolous claim. Fears, 86 A.3d at 804.

With respect to the second prong of the standard, a party must demonstrate that counsel's strategy was "so unreasonable that no competent lawyer would have chosen that course of conduct." Commonwealth v. Chmiel, 889 A.2d 501, 541 (Pa. 2005) (citations omitted). A reviewing court will find an attorney's strategy unreasonable only if an unchosen alternative would offer a substantially greater potential for success than that actually chosen. Commonwealth v. Lawrence, 165 A.3d 34, 41 (Pa. Super. 2017) (citations omitted).

Regarding the final prong of the test, the Pennsylvania Supreme Court has consistently held that if the party asserting the claim fails to establish the prejudice prong, the claim may be dismissed on that basis alone without a determination of whether the party has met the first two prongs. Chimel, 889 A.2d at 540. The prejudice inquiry "requires consideration of the totality of the evidence." Commonwealth v. Spotz, 870 A.2d 822, 834 n.15 (Pa. 2005) (quoting Strickland, 466 U.S. at 695, 104 S. Ct. at 2069). Only in the rarest of circumstances, those where counsel completely failed to oppose the prosecution's case, for example, may prejudice be presumed. Spotz, 870 A.2d at 834 (citations omitted). The defendant must demonstrate that "there is a reasonable probability that the result of the proceeding would have been different absent [counsel's] error." Commonwealth v. Lesko, 15 A.3d 345, 373 (Pa. 2011).

8

In the instant matter, Defendant contends that trial counsel was ineffective by failing to prevent the Commonwealth's introduction of evidence regarding Defendant's prior police contacts; as well as, opinion evidence offered by Detective Gareth Lowe of the Lancaster City Bureau of Police as to the veracity of Defendant's denials of the charged allegations. The court finds neither such argument persuasive.

With regard to Defendant's initial assertion that trial counsel was ineffective for failing to prevent the Commonwealth from introducing evidence regarding his prior police contacts, it is noted that, at trial, during the testimony of Detective Gareth Lowe of the Lancaster City Bureau of Police, the Commonwealth presented the jury with the complete video recording of Defendant's interrogation by members of the Lancaster City Bureau of Police. Said recording was nearly ten hours in duration. Although Defendant initially offered repeated denials of any alleged criminal conduct, he eventually made inculpatory comments and admissions to many of the charged offenses. During his testimony, Detective Lowe stated that Defendant had been arrested and given his Miranda warnings on two prior occasions. (N.T., 1/24/19, p. 179). Additionally, on the date of such interrogation, Defendant had been arrested on a warrant regarding an unrelated Protection from Abuse/Indirect Criminal Contempt matter. (N.T., 1/24/19, p. 177). Trial counsel did not object to such testimony.

It is noted that evidence of prior bad acts or unrelated criminal activity is generally inadmissible to show that a defendant acted in conformity with those prior bad acts or to show

9

criminal propensity. Pa.R.E. 404(b)(1). The purpose of this rule is:

> [T]o prevent the conviction of an accused for one crime by the use of evidence that he has committed other unrelated crimes, and to preclude the inference that because he has committed other crimes he was more liable to commit the crime for which he is being tried. The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty and thus effectively to strip him of the presumption of innocence.

Commonwealth v. Harris, 397 A.2d 424, 427-28 (Pa. Super. 1979). However, evidence of other crimes may be admissible if it is relevant to show some other legitimate purpose. See, Pa.R.E. 404(b); Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987); Commonwealth v. Carpenter, 372 A.2d 806 (Pa. 1977); Commonwealth v. Ivy, 146 A.3d 241, 251 (Pa. Super. 2016); Commonwealth v. Tyson, 119 A.3d 353, 358 (Pa. Super. 2015). Our Supreme Court has observed that a trial court is not "required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those are relevant to the issues...." Commonwealth v. Paddy, 800 A.2d 294, 308 (Pa. 2002)(quoting Commonwealth v. Lark, 543 A.2d 491, 501 (Pa. 1988)). A litigant opens the door to inadmissible evidence by presenting proof that creates a false impression refuted by otherwise prohibited evidence. Commonwealth v. Nypaver, 69 A.3d 708, 716 (Pa. Super. 2013) (quoting Commonwealth v. Puksar, 951 A.2d 267, 280 (Pa. 2008).

Applied to the instant matter, at the evidentiary hearing conducted pertaining to Defendant's Amended PCRA petition, trial counsel credibly testified that his chosen defense strategy was to demonstrate to the jury that Defendant's videotaped confession had been

10

involuntarily given. Counsel testified that he made an affirmative decision to show Defendant's entire statement, which was nearly ten hours in duration, "to show that, in my opinion, that [Defendant] was just broken down throughout." (PCRA Hrg., pgs.10-11). Trial counsel explained that he wanted the jury to "almost feel exhausted watching this ... the same way [Defendant] was exhausted in this interview." (Id. at 17). In reaching this strategic decision, trial counsel anticipated that such decision may result in the Commonwealth being permitted to introduce evidence that Defendant had been arrested and given his Miranda warnings on two previous occasions in an effort to rebut any assertion that Defendant lacked an understanding as to what was happening; however, counsel believed that he lacked the ability to object to the admission of such evidence based upon the evidence and argument which counsel was trying to present. (Id. at 15-16)[14].

Counsel also testified that he felt constrained not to object to testimony related to the reason for which Defendant was arrested and transported to the police station prior to giving his recorded statement. As counsel explained,

> [T]he issue we had was, he wasn't there just for the little girl. He got there from another matter, and we'd be cutting out some time of that video by having – by

---

14 At the evidentiary hearing, trial counsel for both the Commonwealth and Defendant credibly testified that an informal, in-chambers discussion was held regarding admission of the entire statement without substantial redaction. While troubled by the fact that such discussion would have occurred off the record, the court finds that the failure of trial counsel to offer any objections thereto not to be controlling on the conclusions reached herein – particularly, where, as noted, said evidence was properly introduced to rebut the evidence and arguments advanced by counsel for the Defendant and where such strategy was reasonable given the challenges faced by counsel for the Defendant as a result of the extensive evidence presented at trial by the Commonwealth.

11

saying, for example, he just showed up at this police station for questioning.

So, . . . it really came down to, I can't have my cake and eat it too. Either I get the whole time in and I want completeness of the video . . . from the beginning and you have to play that and not break it up.

So . . . , why they picked him up, that had to come in based on our strategy. And there was no way to avoid that aspect, in my opinion. And from talking with my client, we were just thinking, hey, they know you're in custody, it's for a different matter, we have to own that, you didn't do anything to your daughter.

(Id. at 11). It is noted that the introduction of evidence regarding the indirect criminal contempt matter was consistent with the chosen defense strategy as such evidence permitted counsel to argue to the jury that the investigating law enforcement officers ambushed an unsuspecting person and then subjected him to a ten-hour, preplanned, biased, and unfair interrogation which led to an unreliable admission[15]. Additionally, trial counsel testified that his client understood that playing the full video would open the door to his prior arrest record being raised in refuting that he did not understand the situation. (Id. at 17, 22, 27-28).

Upon consideration of the foregoing, it is apparent that the evidence now questioned was properly admitted by the trial court as serving to rebut the advanced arguments, which were central to Defendant's chosen theory of the case. To the extent that the instant claim may have arguable merit, it is noted that such evidence was admitted based upon a specific strategic decision made

---

15 In fact, Detective Lowe testified at trial that he and another officer had gone to a certain address to speak with the occupant regarding a child abuse complaint related to Defendant, but upon finding Defendant there arrested him on an outstanding warrant. (N.T., 1/26/16, p. 177). Further, Detective Lowe testified that he indicated to Defendant that he wished to speak with Defendant regarding an unrelated matter once they reached the police station, but he did not know if Defendant was aware of the abuse allegation. (Id., at 178-79).

12

by trial counsel to best advance Defendant's interests.

In this matter, trial counsel was charged with presenting a defense in the face of extensive evidence offered by the Commonwealth, as will be addressed below. In recognition of the fact that any defense offered in the instant matter would need to discredit Defendant's own recorded admissions, trial counsel based his theory of defense in challenging the voluntariness of the Defendant's admissions to discredit such admissions of criminal, sexual conduct. There can be little doubt that the only way Defendant could receive a favorable verdict would be to convince the jury that Defendant's admissions were of an involuntary nature and should be disregarded in their entirety. Crucial to trial counsel's strategy was the presentation to the jury of the entire ten-hour interrogation of the Defendant. Such video recording served to demonstrate to the jury: the duration of the interrogation, the methods employed by the investigating officers in attempting to extract an admission; and, the occasional, confrontational tone adopted by the officers. Accordingly, throughout the entire trial, trial counsel argued to the jury that Defendant only made his inculpatory admissions as the result of a will overwhelmed by the duration and nature of such interrogation. Counsel argued that any admissions made by Defendant, as a result thereof, lacked inherent credibility and should be disregarded as any such statements were given solely in an effort to bring an end to the police interrogation Additionally, it is noted that, by presentation of the recorded interview, counsel could demonstrate Defendant's theory of defense without Defendant being exposed to the risk of cross-examination by the attorney for the Commonwealth.

13

Upon consideration of the totality of the attendant circumstances, this court cannot conclude that counsel's decisions were so unreasonable that no competent lawyer would have chosen that course of conduct nor that an unchosen alternative would have offered a substantially greater potential for success.

The court reaches such decision upon consideration of any possible prejudice which may have resulted to Defendant based upon the admission of the now challenged evidence. While the introduction of evidence regarding Defendant's prior arrests may well possess certain inherent prejudicial impact, it must be considered that jury was provided with no specific information as to the reasons for the prior arrests and no evidence was presented at trial as to whether any such arrest resulted in a conviction. The only specific facts introduced regarding these matters was limited testimony that Defendant was arrested immediately prior to the commencement of his recorded statement on an existing warrant related to a Protection from Abuse/Indirect Criminal Contempt matter, which had no relevance to the charges for which Defendant was on trial.

Additionally, it is recognized that the trial judge gave a firm cautionary instruction to the jury that Defendant's prior arrests could be used only for the limited purpose of determining the voluntariness of Defendant's statement. Specifically, the trial court charged the jury as follows:

> There has . . . been testimony about the defendant initially being arrested
> for an indirect criminal contempt charge as a result of this PFA . . . .
> Also, there was reference to the defendant having been arrested and having
> been given his Miranda rights before. Now, there is no evidence that the defendant
> has ever been convicted of anything. There is no evidence that these formal arrests

14

> ever went anywhere or anything ever came of them. You may not consider any of that evidence as evidence of defendant's guilt of these charges. The same is true of the warrant that you heard read on the videotape of the statement. That was the first thing that was done. Again, there is no indication whatsoever of the disposition of that matter, what happened with it, what didn't happen or anything else, so you cannot use that as evidence that the defendant is guilty of the offense charged.

(N.T. Jan. 26, 2016, at 246). It is axiomatic that the Law presumes that the jury will follow the instructions of the trial court. Commonwealth v. Brown, 786 A.2d 961 (Pa. 2001); see also, Commonwealth v. Arrington, 86 A.3d 831 (Pa. 2014) (deeming that jury followed limiting instructions offered by trial judge regarding appropriate consideration of the defendant's prior criminal convictions).

Lastly, the court need recognize the volume of evidence presented at trial by the Commonwealth. At trial, the Commonwealth presented the testimony of the minor victim, who testified with great specificity regarding the nature of the acts committed upon her by the Defendant in graphic detail, the time period over which said acts occurred, and the location where such conduct occurred. The Commonwealth bolstered the credibility of the minor victim's account by presenting the testimony of numerous individuals capable of discussing the nature of the minor victim's disclosures and several prior statements offered by the minor victim which were consistent with her testimony at trial. Additionally, and perhaps most problematic for Defendant, was the admission of the nearly ten hour recorded statement given by Defendant to the investigating law enforcement officers. As noted above, after offering hours of denials and

15

inconsistent statements, during the interrogation, Defendant made a direct admission to much of the charged conduct.

In light the foregoing, Defendant has failed to establish any requisite prejudice. Stated another way, Defendant is unable to demonstrate any reasonable probability that the result of the proceeding would have been different absent counsel's chosen course of action in this regard or absent admission of the now challenged evidence.

Defendant also maintains that trial counsel was ineffective for failing to prevent, and repeatedly eliciting, the introduction of testimony offered by Detective Gareth Lowe of the Lancaster City Bureau of Police as to his opinions regarding Defendant's veracity during the recorded statement.

In addressing this claim, it is noted that our appellate courts have routinely held that the determination of the credibility of a witness is within the exclusive province of the jury. Commonwealth v. Crawford, 718 A.2d 768, 772 (Pa. 1998). Thus, expert testimony addressing the credibility of a witness is inadmissible. Commonwealth v. Seese, 517 A.2d 920, 922 (Pa. 1986). "Whether the expert's opinion is offered to attack or enhance, it assumes the same impact – an 'unwarranted appearance of authority in the subject of credibility which is within the facility of the ordinary juror to assess.'" Commonwealth v. Spence, 627 A.2d 1176, 1182 (Pa. 1993). In Commonwealth v. McClure, 144 A.3d 970 (Pa. Super. 2016), the Superior Court of Pennsylvania applied the above rationale beyond the realm of expert witnesses into situations where a law

16

enforcement officer offers opinions regarding the credibility of the accused. In said decision, the Superior Court found, in a direct appeal context, that the introduction of a law enforcement officer's opinions as to the accused's credibility to constitute prejudicial error, even though the trial court had provided a limiting instruction to the jury. (Id. at 977). Accordingly, this court deems Defendant's current claim as possessing arguable merit.

Turning to the question of whether trial counsel possessed a reasonable strategic basis for his actions, trial counsel explained at the evidentiary hearing that such opinion testimony was consistent with his chosen defense strategy. Stated another way, counsel diligently strived to convince the jury that Defendant's statement was given involuntarily, and his goal was to demonstrate that the arresting detective had prematurely and unfairly formed an opinion as to the Defendant's guilt before questioning him. As such, the detective became biased and fixated on the Defendant to the exclusion of all others. Such bias controlled the manner of the interrogation and led to the detective browbeating Defendant into the damaging admissions which were offered near the end of the extensive interview. (PCRA Hrg., pgs. 30-32). Counsel took the position that the detective was unwilling to terminate the interrogation until he heard what he wanted to hear. Again, counsel repeatedly introduced evidence and offered such argument throughout the entire trial. The fact that such strategy was ultimately unsuccessful is of no import absent any indication that another strategy offered a significantly greater chance of success. Upon consideration of the totality of the attendant circumstances, this court cannot conclude that

17

counsel's decisions were so unreasonable that no competent lawyer would have chosen that course of conduct nor that an unchosen alternative would have offered such a substantially greater potential for success.

While this court is cognizant of the above-referenced decision of the Superior Court of Pennsylvania in <u>Commonwealth v. McClure,</u> it is noted that <u>McClure</u> was decided in the context of a direct appeal, rather in a collateral context addressing any strategic decisions made by trial counsel. Additionally, in <u>McClure,</u> unlike in the present case, the jury did not see and hear the entirety of the defendant's statement about which the law enforcement officer offered his opinion. The jury was thus deprived of the opportunity to independently assess the defendant's credibility. In the present case, not only did the jurors see and hear Defendant's entire statement, but the trial judge instructed them in a way that provided them with the tools to independently assess Defendant's credibility.

Although trial counsel did not request a specific curative instruction with respect to Detective Lowe's opinion testimony, the trial judge had cautioned the jurors during his opening instructions that it was their responsibility to weigh all the evidence presented and to assess the credibility of witnesses. (N.T. Jan. 20, 2016, at 8, 11). As part of his jury charge at the conclusion of the trial, the trial judge explicitly addressed Detective Lowe's questioned testimony, stating:

18

The final point deals with some of the testimony by Detective Lowe that occurred during the cross-examination. What the detective believes, thinks, or what his opinion is has absolutely nothing to do with your role. Anybody is free to hold any opinion they wish about any subject they wish. You are to be guided solely by the evidence in this case and the law as I instruct you. It is your opinion only that matters and nobody else's.

(N.T. Jan. 26, 2016, at 247-48). Additionally, in explaining that the jurors were the sole judges of the credibility of witnesses and the witness's testimony, the trial judge presented several factors the jurors could utilize in performing that responsibility. Among these were

Did the witness testify in a convincing manner? How did the witness look, act and speak while testifying? Was the witness's testimony uncertain, confused, self-contradictory or evasive? Did the witness have any interest in the outcome of the case? . . . . How well does the testimony of the witness square with the other evidence in the case, including the testimony of other witnesses? Was it contradicted or supported by the other testimony in evidence? Does the witness's testimony make sense to you?

(Id. at 251). Further, the trial judge cautioned the jurors that it was their responsibility to give the testimony of every witness and all the other evidence whatever credibility and weight they thought it deserved. (Id. at 252). Taken in their entirety, the repeated instructions offered by the trial court with respect to the testimony at issue minimized any potential prejudicial effect of such evidence.

Additionally, as discussed above, the Commonwealth presented a multitude of evidence at trial against the defendant, including: the testimony of the minor victim; the testimony of numerous witnesses as to prior consistent disclosures and statements made by the victim; and, the

19

lengthy admissions made by Defendant. Considering such, Defendant has failed to establish any requisite prejudice.

To the extent that Defendant currently contends that he was prejudiced as a result of the cumulative effect of the alleged errors of trial counsel, it is recognized that the Pennsylvania Supreme Court has repeatedly held that no number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually. Commonwealth v. Johnson, 966 A.2d 523, 532 (Pa. 2009). Thus, to the extent claims are rejected for lack of arguable merit, there is no basis for an accumulation claim. Commonwealth v. Sattazahn, 952 A.2d 640, 671 (Pa. 2008). When the failure of individual claims is grounded in lack of prejudice, however, then the cumulative prejudice from those individual claims may be properly assessed. Johnson, 966 A.2d at 532 (citing Commonwealth v. Perry, 644 A.2d 705, 709 (Pa. 1994) for the principle that a new trial may be awarded due to cumulative prejudice accrued through multiple instances of trial counsel's ineffective representation). Based upon this court's review of the record in this matter, and for the reasons stated above, we have individually rejected Defendant's claims of ineffectiveness based upon a lack of prejudice. Accordingly, we now find that Defendant was failed, even in the aggregate to establish ineffective assistance of counsel.

20

## ILLEGALITY OF SENTENCE

Defendant also argues that his lifetime registration under the Sexual Offender Registration and Notification Act is illegal based on the Pennsylvania Supreme Court decision in Commonwealth v. Muniz, 164 A.3d 1189 (Pa. 2017).[16] The Commonwealth acknowledges that retroactive application of SORNA has been deemed unconstitutional by Muniz as violating the *Ex Post Facto* Clauses of the United States Constitution and Pennsylvania Constitution. The Commonwealth argues, however, that Defendant is required to register for life under Subchapter I of Act 29 of 2018, which the Commonwealth seemingly characterizes as non-punitive civil legislation.

The Commonwealth of Pennsylvania has had a rather checkered history with respect to sex offender registration laws. Initially, Megan's Law I was enacted on October 24, 1995, effective April 22, 1996. 42 Pa. C.S. §§ 9791-9799. Under this statute, only a few offenses were included and all offenders were limited to a ten year registration period. The sexually violent predator provisions of Megan's Law I were struck down by the Supreme Court in Commonwealth v. Williams, 733 A.2d 593 (Pa. 1999), after which Megan's Law II was signed into law on May 10, 2000, effective July 10, 2000.

---

[16] It is noted that the arguments and analysis contained in Defendant's Brief in support Amended Post-Conviction Relief Action makes repeated mention to Act 10 [of 2018]. The analysis conducted by the court in this matter will address Act 29 of 2018 which was enacted by the General Assembly to replace Act 10, effective June 12, 2018.

21

This version of the law expanded the number of registrants and imposed lifetime registration on the most serious offenders. The provision imposing possible life imprisonment on sexually violent predators who failed to comply with registration requirements was struck down and severed in Commonwealth v. Williams, 832 A.2d 962 (Pa. 2003) (Williams II), but the rest of the law remained valid and the Supreme Court concluded "[absent] competent and credible evidence undermining the relevant legislative findings, Megan's Law's registration, notification, and counseling provisions constitute non-punitive, regulatory measures supporting a legitimate governmental purpose." Id. at 986. In Commonwealth v. Salter, 858 A.2d 610 (Pa. Super. 2004), the Superior Court undercut the penalty for a registrant failing to verify an address, school or job by requiring the Commonwealth to prove receipt by the registrant of the form necessary for verification.

On November 24, 2004, the Legislature passed Megan's Law III which amended Megan's Law II and further altered the number of offenses and the requirements imposed. Megan's Law III, however, was declared unconstitutional in its entirety *ab initio* because its enactment violated the single subject rule. Commonwealth v. Neiman, 84 A.3d 603 (Pa. 2013). Before the Supreme Court held it unconstitutional, however, Megan's Law III was amended several times by the legislature. While lawfully enacted, these amendments did not survive the invalidation of Megan's Law III. See Commonwealth v. Derhammer, 173 A.3d 723 (Pa. 2017).

Prior to the Neiman decision, Megan's Law III expired and was replaced by SORNA, which took effect December 20, 2012, to bring Pennsylvania into compliance with the federal Adam Walsh Child Protection and Safety Act of 2006. SORNA applied retroactively to any individual serving a sentence for a sexual offense and to any individual whose registration period

22

under a prior registration statute had not expired as of SORNA's effective date.

In Muniz, the Pennsylvania Supreme Court held that retroactive application of the registration provisions of SORNA violated the *ex post facto* clauses of both the United States Constitution and the Pennsylvania Constitution. In order to be deemed an *ex post facto* law, a penal law must apply to events occurring before its enactment and it must disadvantage the individual to whom it is applied. Muniz, 164 A.3d at 1196. In Muniz, the defendant's crime occurred prior to February 7, 2007, the date of his non-jury trial, but he absconded and was not sentenced until after SORNA took effect. As a consequence, he was ordered to register as a sex offender for life under SORNA rather than for the ten-year period under Megan's Law II which had been in effect at the time of his offense. The Supreme Court in Muniz explicitly held that SORNA's purpose was effectively punitive despite the Legislature's stated non-punitive purpose of protecting the public from sex offenders.

Subsequently, the Superior Court held that Muniz created a substantive constitutional rule that applied retroactively in the PCRA context. Commonwealth v. Rivera-Figueroa, 174 A.3d 674, 678 (Pa. Super. 2017). Substantive rules include those that prohibit a certain category of punishment for a class of defendants based on their status or offense. Id. (citations omitted). The Superior Court relied particularly on Montgomery v. Louisiana, 577 U.S. ___, 136 S. Ct. 718 (2016), which held that the United States Constitution required state collateral review courts to give retroactive effect to substantive rules of constitutional law which control the outcome of cases. Rivera-Figueroa, 174 A.3d at 678. The Superior Court also considered Montgomery's extension of the holding of Miller v. Alabama, 567 U.S. 460 (2012), to the state collateral review context. As explained by the Superior Court,

23

> Montgomery held Miller announced a new substantive rule because it rendered life without parole an unconstitutional penalty for a class of defendants because of their status—that is, juvenile offenders whose crimes reflect the transient immaturity of youth. Thus, the substantive rule in Miller retroactively applied in the collateral context because there was a significant risk that a defendant faced a punishment the law cannot impose.

Rivera-Figueroa, 174 A.3d at 678 (internal citations and quotation marks omitted).

Muniz similarly created a substantive rule that would apply retroactively in the collateral review context "because SORNA punishes a class of defendants due to their status as sex offenders and creates a significant risk of punishment the law cannot impose." Id.

In the aftermath of Muniz, the General Assembly passed Act 10 of 2018 (hereinafter, "Act 10")[17] to address this, and related, decisions and to protect the people of the Commonwealth by "[p]roviding for registration, community notification and access to information regarding sexually violent predators and offenders who are about to be released from custody and will live in or near their neighborhood." 42 Pa. C.S § 9799.51(b)(1)(4). In enacting this version of the sex offender registration statute, the Legislature created two registration tracks – Subchapter H, 42 Pa. C.S. §§ 9799.10-41, relating to offenders whose crimes were committed on or after December 20, 2012, and Subchapter I, 42 Pa. C.S. §§ 9799.51-75, relating exclusively to those whose offenses were committed from April 22, 1996, through December 19, 2012. Subchapter H closely parallels SORNA while Subchapter I principally tracks Megan's Law II with its provision of ten year or lifetime registration. Subchapter I also incorporates some provisions from SORNA. "Subchapter I contains less stringent reporting requirements than Subchapter H." Commonwealth v. Alston, 212 A.3d 526, 529 (Pa. Super. 2019).

---

[17] 2018, Feb. 21, P.L. 27, No. 10, 42 Pa. C.S. §§ 9799.10-9799.75.

24

Subsequently, the Legislature enacted Act 29[18] to replace Act 10. While Act 10 retained the tier-based registration requirements for sex offenders, as well as the designation of certain offenders as sexually violent predators, Act 29 eliminates tiers and requires sexual offenders to register for either ten years or the offender's lifetime, depending upon the underlying offense. Id. at § 9799.55(a), (b). Act 29 does not change Act 10's provisions regarding registration requirements. As with Act 10, under Subchapter I of Act 29 SVPs are still required to report in person quarterly. Id. at § 9799.60(a), although, subject to certain conditions, SVPs and other lifetime registrants may petition for exemption from reporting after twenty-five years. Id. at § 9799.59(a). Individuals subject to registration who fail to register are subject to prosecution. Id. at §§ 9799.56(d), 9799.60(d). While individuals subject to reporting requirements must inform the Pennsylvania State Police within three days of changes in residence, place of employment or educational institution, they are not required to do so in person. Id. at § 9799.56(a)(2).

Additionally, until recently, SVPs and lifetime registrants were included for life, or until exempted, on a publicly accessible website maintained by the Pennsylvania State Police, which included the individual's name and aliases, year of birth, street address, school address, general work location, photograph, physical description, license plate and vehicle description and the offense for which the individual was convicted. Id. at § 9799.63(c), (d). The Superior Court, however, determined that Section 9799.63 was punitive in effect, declared it unconstitutional, and severed it from the remainder of the statute. Commonwealth v. Moore, ___, A.3d ___, 2019 WL 5415854, No. 1566 WDA 2018 (Pa. Super. Oct. 23, 2019).

---

[18] 2018, June 12, P.L. 1952, No. 29, effective June 12, 2018.

25

In <u>Alston,</u> the Superior Court determined that, because the jury did not make a specific finding as to the dates when the defendant committed his crimes, and because the defendant's crimes straddled the operative dates of Subchapters H and I, the defendant was entitled to the lesser reporting requirement of Subchapter I. <u>Alston,</u> 212 A.3d at 530. The same situation holds in the present case in that the Commonwealth concedes that Defendant's criminal sexual conduct straddles the operative dates for Subchapters H and I and the jury did not make a specific finding as to the dates on which they occurred. Although the Commonwealth urges that the lower reporting requirements of Subchapter I should, therefore, be applied, the court deems it necessary to consider whether retroactive application of Act 29, like SORNA, should be deemed to be unconstitutional as violative of the *Ex Post Facto* provisions of the United States Constitution and the Pennsylvania Constitution. Recognizing the effect of the Superior Court decision in <u>Moore,</u> however, the court observes that, even if it determines that Subchapter I of Act 29 applies, Defendant cannot be required to expose his personal information to public scrutiny on the Pennsylvania State Police website.

Determining whether Act 29, like SORNA, violates the federal prohibition against *ex post facto* laws involves a two-step analysis which considers whether the Legislature's intent was punitive and, if not, whether the statute's effect or purpose is so punitive as to negate the stated non-punitive intent. <u>Muniz,</u> 164 A.3d at 1208. Accepting the Legislature's explicit statement that Act 29 is non-punitive, and recognizing the changes made from SORNA, the question remains whether the punitive effect of Act 29 is great enough to overcome the statement of legislative intent to the contrary and require the Court to determine that Act 29 is an unconstitutional *ex post facto* law. In analyzing this question, the Court remains mindful that there is a general presumption that

26

lawfully enacted statutes are constitutional, <u>Muniz,</u> 164 A.3d at 1195, and that "only the 'clearest proof' may establish that a law is punitive in effect," <u>id.</u> at 1208.

To determine a statute's punitive effect, the U.S. Supreme Court set out seven factors for a court to consider:

> [w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.

<u>Kennedy v. Mendoza-Martinez,</u> 372 U.S. 144, 168-69 (1963).

These factors were subsequently employed by the U.S. Supreme Court in holding Alaska's Sex Offender Registration Act non-punitive in <u>Smith v. Doe,</u> 123 U.S. 1140 (2003), and adopted by the Pennsylvania Supreme Court to hold Megan's Law II non-punitive in <u>Williams II,</u> 832 A.2d 962 (Pa. 2003).

The Pennsylvania Supreme Court has recognized that two of these factors, whether the statute comes into play only on a finding of scienter and whether the behavior to which the statute applies is already a crime, are of little significance in assessing a sex offender registration statute. <u>Muniz,</u> 164 A.3d at 1213-14, 1216 (citing <u>Smith,</u> 538 U.S. at 105). While the remaining <u>Mendoza-Martinez</u> factors will be addressed sequentially, the court remains cognizant of the recent opinion in <u>Moore.</u> There, a panel of the Superior Court held the internet dissemination provisions of Act 29, 42 Pa. C.S. § 9799.63, to be punitive in effect and deemed retroactive application of those provisions to violate the federal *Ex Post Facto* Clause. That said, the panel also found the offending section to be severable from the remainder of the statute and affirmed the appellant's

27

judgment of sentence while directing that appellant's entry was to be removed from the Pennsylvania State Police website. The <u>Moore</u> panel explicitly stated that the appellant presented only a narrow challenge to the manner in which sex offender information was disseminated and did not challenge Act 29's registration and reporting requirements.[19] <u>Moore,</u> 2019 WL 5415854 at *2 n.3. As a consequence, the Superior Court panel specifically applied the <u>Mendoza-Martinez</u> factors "solely to the dissemination provisions of [Act 29]." and it was, therefore, unnecessary to consider "the duration of an offender's registration, or whether the statute required in-person reporting and how often, or other provisions not required by Section 9799.63." <u>Id.</u> at *5 n.6. This limitation in the scope of the panel's analysis would seem to render any further broad pronouncements regarding the constitutionality of any retroactive application of Act 29's registration and reporting requirements as dicta. Because Defendant here is raising a broad challenge to the application of Act 29, and because the court has broader concerns regarding the other provisions of Act 29, it is necessary to undertake a fuller examination of the statute even though the provisions for internet dissemination have played a major role in the analyses of sex offender registration statutes undertaker by Pennsylvania's courts hereto.

**1. Affirmative disability or restraint**

In <u>Williams II,</u> the Pennsylvania Supreme Court found that the registration and notification requirements of Megan's Law II did not constitute an affirmative disability or restraint. Although sexually violent predators might be denied certain employment as a consequence of public notification, such restrictions were in direct furtherance of compelling governmental interests.

---

[19] In <u>Moore,</u> the Superior Court referred to the applicable statutory provisions as "SORNA II." For internal consistency, the court refers to such provisions herein as "Act 29."

28

Further, any disabilities imposed upon sexually violent predators were potential collateral restraints flowing solely from the secondary effects of registration and notification. In contrast, in <u>Muniz,</u> the Supreme Court in considering SORNA aligned with the defendant on this factor. Observing that the defendant, a Tier III SORNA offender, would have to report in person a minimum of 100 times over 25 years and extending beyond that for the rest of his life, and that homeless offenders would have to report 300 times over that same period, the Supreme Court found that the statute's in-person reporting requirements were a direct restraint upon the defendant. <u>Muniz,</u> 164 A.3d at 1210-11.

The Commonwealth maintains that, under Act 29, this factor weighs against finding the statute to be punitive in nature. Subchapter 1 of Act 29 requires offenders other than sexually violent predators and homeless offenders to appear in person only once per year to complete a verification form and to be photographed. 42 Pa. C.S. § 9799.60(b). Further, while all offenders must inform the Pennsylvania State Police of changes in residence, changes of employment, and changes of educational institution or location, 42 Pa. C.S. § 9799.56(2), such notifications need not be made in person. Additionally, all offenders are eligible to apply for exemption from reporting and notification requirements after twenty-five years. 42 Pa. C.S. § 9799.59(a). Based on these provisions, the Commonwealth asserts that Act 29 satisfies the analysis done by the United States Supreme Court in evaluating this factor with respect to Alaska's sex offender registration statute in that it imposes no physical restraint, does not restrain the activities sex offenders may engage in, and, while it requires them to report changes in jobs and residences, it does not require them to obtain permission for such changes.

29

However, five years after the United States Supreme Court in <u>Smith</u> found that Alaska's sex offender registration statute comported with the federal constitution, the Alaska Supreme Court held that it violated the Alaska constitutions' *ex post facto* provisions. <u>Doe v. State of Alaska,</u> 189 P.3d 999 (Alaska 2008). In so doing, the Alaska court found that the statute imposed a direct restraint even though it did not require in-person reporting, stating that the statute "impose[s] significant affirmative obligations and a severe stigma on every person to whom [it] appl[ies]." <u>Doe,</u> 189 P.3d at 1009 (quoting <u>Smith,</u> 538 U.S. at 111 (Stevens, J. dissenting)). In particular, the court found that the statute compelled offenders, under threat of prosecution, "to contact law enforcement agencies and disclose information, . . . some of which is otherwise private, most of it for public dissemination." <u>Id.</u>

While sexually violent predators are still required to report quarterly and homeless offenders are still required to report monthly, these requirements do not apply to Defendant as he has not been determined to be a sexually violent predator and there is no indication that he is homeless. In changing the reporting requirements for some offenders and doing away with the need for additional in-person reporting for certain matters, Act 29 has thus reduced the penalties on offenders like Defendant. While any offenders who fail to register or to provide notification of change of residence as required are subject to prosecution, 42 Pa. C.S §§ 9799.56(d), 9799.60(d),(e), this possibility would arise only as a result of a failure to satisfy those less rigorous reporting requirements.

That said, the reporting requirements are still subject to the same criticism as was applied to the Alaska statute in <u>Doe.</u> Even acknowledging that the internet dissemination provisions are no longer relevant under <u>Moore,</u> the reporting and registration requirements still compel offenders

30

to contact the Pennsylvania State Police under threat of prosecution, whether in person or otherwise, and to disclose personal information. Further, the stigma attached to being compelled to register as a sex offender still cannot be avoided as the statute is currently constituted. The statute declares a legislative finding that "sexually violent predators and offenders pose a high risk of engaging in further offenses even after being released from incarceration or commitments . . . ." 42 Pa. C.S. § 9799.51(a)(2). Thus, every individual placed on the registry for whatever offense is stigmatized as a likely recidivist. Even with the modification from the prior version of the statute, Act 29 still serves as a direct restraint, which weighs in favor of finding the statute punitive.

## II. Historically considered punishment

In Muniz, the Pennsylvania Supreme Court acknowledged that the Smith majority had distinguished colonial era public shaming punishments from sex offender registration statutes, finding that public shaming involved more than just the dissemination of information. Further, the publicity and stigma resulting from the dissemination of an offender's information was not integral to the objective of the regulatory scheme. Muniz, 164 A.3d at 1212. The Muniz Court, however, noted that Smith was decided in an era in which the internet was less pervasive.

> Yesterday's face-to-face shaming punishment can now be accomplished online, and an individual's presence in cyberspace is omnipresent. The public internet website utilized by the Pennsylvania State Police broadcasts worldwide, for an extended period of time, the personal identification information of individuals who have served their sentences. This exposes registrants to ostracism and harassment without any mechanism to prove rehabilitation–even through the clearest proof.

Id. (quoting Commonwealth v. Perez, 97 A.3d 747, 765-66 (Pa. Super. 2014) (Donohue, J. concurring)).

In light of this, Muniz found SORNA's publication requirements akin to shaming. While this determination is made moot by Moore, Muniz also found that the requirements of SORNA

31

were akin to probation which has historically been regarded as a form of punishment.

> Probation entails a set of mandatory conditions imposed on an individual . . . released after serving a prison sentence, or . . . sentenced to probation in lieu of prison . . . . These conditions can include psychiatric treatment, limitations on travel, and notifying a probation officer when any change of employment or residency occurs. Probationers are also subject to incarceration for a violation of any condition of their probation.

Id. at 1213 (quoting Perez, 97 A.3d at 763-64 (Donohue, J. concurring)) (citations omitted).

SORNA similarly required offenders to notify the Pennsylvania State Police of changes in employment or residence and threatened them with incarceration for violating the statutory requirements. Additionally, while the Commonwealth argues that the process of incarcerating a defendant for non-compliance with registration requirements differs significantly from the process of incarcerating a defendant for a probation violation, Muniz found violations for noncompliance with both probation and SORNA registration requirements to be procedurally parallel in that each required further factual findings to determine whether a violation had occurred and in both situations an individual would not be subject to the mandatory requirements but for the original underlying offense. Id. Similarly, under Act 29 a defendant would only be subjected to the mandatory reporting requirements if he or she had been determined to be a sex offender or a sexually violent predator and further fact finding would be needed to determine whether such a person had violated the reporting and notification requirements. This factor would also weigh in favor of finding Act 29 to be punitive.

### III. Promotes traditional aims of punishment

The traditional aims of punishment are deterrence and retribution. The Supreme Court stated in Muniz that "the prospect of being labeled a sex offender accompanied by registration

32

requirements and the public dissemination of an offender's personal information over the internet has a deterrent effect." Id. at 1215. However, as the Supreme Court recognized, "the mere presence of a deterrent purpose does not render such sanctions criminal." Id. (quoting *Smith*, 538 U.S. at 102) (internal quotation marks omitted). Because SORNA included as crimes requiring registration a number of predicate offenses which lacked a sexual component or did not require substantial periods of incarceration,[20] the Supreme Court determined that the statute clearly aimed at deterrence.

In contrast to SORNA, the crimes in Subchapter I of Act 29, addressing SVPs and other lifetime registrants, are nearly all felonies with sexual components with substantial maximum terms of imprisonment. The Commonwealth, therefore, argues that the court should be guided by the analysis in Williams II in which the Supreme Court found that the registration, notification and counseling provisions of Megan's Law II were unlikely to have even a marginally deterrent effect on an offender given the substantial terms of incarceration attached to predicate offenses. Williams II, 832 A.2d at 978.

Even accepting, however, that the predicate offenses involve potentially substantial terms of incarceration, the fact remains that the reporting requirements imposed as a result could often exceed an individual's term of incarceration. With respect to the offenses in Defendant's case, Unlawful Contact with a Minor is graded as a felony of the third degree, 18 Pa. C.S. § 6318(b)(2), for which the maximum sentence would be seven years imprisonment, 18 Pa. C.S. § 106.

---

[20] By way of illustration, under SORNA, interference with custody of children, 18 Pa. C.S. § 2904, a second degree misdemeanor with no sexual component, was a Tier I offense requiring 15 years registration. See *Muniz*, 640 Pa. at 743, 164 A.3d at 1215.

33

Solicitation for the purpose of promoting or facilitating Sexual Abuse of Children, 18 Pa. C.S. §§ 902(a), 6312(b), is graded as a felony of the second degree, 18 Pa. C.S. § 905(a), with a maximum term of imprisonment of ten years. Being required to register for a period of ten years would mean Defendant had to register for a period equal to the maximum sentence for Defendant's one offense and greater than the maximum sentence for the other. In light of this, it would be difficult to accept that Act 29 lacks deterrent effect since it also exposes an individual to the same undesirable prospects of being labeled a sex offender and being compelled to register for an extended period of time after completing a term of imprisonment.

The Supreme Court in Williams II further found that any retributive effect of the statute was ancillary to the statute's stated goals and that this weighed against the statute being punitive. 832 A.2d at 978. In Muniz, however, the Supreme Court recognized that "[r]etribution, in its simplest terms 'affix[es] culpability for prior criminal conduct,' and in fact, SORNA is applicable only upon a conviction for a predicate offense." Id., 164 A.3d at 1215 (citations omitted). While Act 29 addresses deficiencies the Supreme Court recognized with respect to SORNA, including non-felony and non-sex offenses, the comments of the Muniz Court with respect to the deterrent effect of registration seem no less valid. Further, while Moore addresses the effects of dissemination of an offender's information, Act 29, like SORNA, is also only applicable upon a conviction for a predicate offense and thus falls within the definition of retribution.

Because it exposes an individual to the undesirable prospects of being labeled a sex offender and being compelled to register as such, it would be difficult to view Act 29 as lacking a deterrent or retributive effect. Act 29 also exposes an individual to a longer term of punishment than would be expected from even a substantial term of imprisonment. Taken together, these effects are

34

enough to weigh in favor of the statute being punitive.

## IV.   Alternative purpose

In <u>Muniz,</u> it was conceded that this factor weighed in favor of finding SORNA non-punitive because there was a rational connection to public health and safety.   164 A.3d at 1216.   In particular, the statute was intended to address issues of recidivism and to respond to the federal mandate to protect the public against sex offenders.   <u>Id.</u> at 1216-17.

The Court accepts that the same alternative purposes are relevant to Act 29 and weigh in favor of finding it non-punitive.   At the same time, it is worth noting that the Alaska Supreme Court, in finding that state's sex offender registration statute unconstitutional, observed that "if recidivism . . . were the only concern, the statute would apply not just to convicted sex offenders but to other individuals who may pose a threat to society even if they were not convicted."   <u>Doe,</u> 189 P.3d at 1014 (citing as examples statutes from Washington and Utah which included in the registration requirement individuals found not guilty by reason of insanity or found incompetent to stand trial).

## V.   Excessive in relation to the alternative purpose

In <u>Muniz,</u> the Supreme Court found SORNA to be excessive because there was no way for individuals deemed sexually violent predators to escape lifetime registration by demonstrating they no longer posed a substantial risk to the community and because the statute was over-inclusive in that it included minor and non-sexual offenses in the sex offender registry.   164 A.3d at 1217-18. These specific issues have been addressed in Act 29 which includes almost exclusively sex based offenses and which allows an individual to seek exemption from reporting after 25 years.   One trial court assessing the exemption requirements found the process for obtaining an exemption to

35

be "largely fanciful." Commonwealth v. Carpenter, No. CR-192-2017 (Lycoming County Ct. Com. Pl. 2017) (specifically addressing Act 10).

> A registrant must file a petition seeking removal after 25 years of registration. A registrant may petition the trial court for exemption . . . only if he is not convicted of an offense punishable by more than one year in jail, or after commencement of his registration or release from custody, whichever is later. Lastly the offender must be assessed by the Sexual Offender Assessment Board and prove to a court by clear and convincing evidence that he is not likely to pose a threat to the safety of any other person . . . . Indeed, the court cannot foresee one being designated as an SVP and meeting the established criteria, and 25 years later proving the negative.

Id. at 7.

Accordingly, Act 10 would be excessive under the Muniz analysis and this factor weighs in favor of finding the statute punitive. Act 29, containing the identical provision, would be similarly punitive as related to offenders required to register for life.

While not relevant in this case because Defendant is a lifetime registrant under Act 29, the fact that the statute would grant lifetime registrants the possibility, however remote, of exemption from reporting, the exemption requirements would not even apply to offenders required to register for ten years. After that ten-year period, such an offender would be removed from the registry, but it would be impossible for him to obtain exemption prior to the end of his registration period and unnecessary for him to seek exemption after twenty-five years. There would be no way for such an individual to seek removal from the registry prior to the expiration of his full registration period. This inability to seek exemption from the registration period based on proof that an offender is no longer a danger would also Act 29 excessive.

Ultimately, four of the five factors analyzed in Muniz weigh in favor of Act 29 being punitive–it involves affirmative disabilities or restraints, its sanctions have been traditionally viewed as punishment, its application promotes the traditional aims of punishment, including

36

deterrence and retribution, and it is excessive in relation to any alternative purpose. These are enough to find that Act 29, like SORNA, fails to meet Constitutional muster. The court, therefore, must reject the Commonwealth's argument that the revised law renders Defendant's registration requirements non-punitive and constitutional. While the stated goal of protecting the public from sex offenders by providing for registration and community notification is an admirable one, the Commonwealth must still do more to reduce the punitive effect of the requirements it seeks to impose on such individuals.

The Commonwealth argues that Defendant would suffer no increased punishment should this court subject him to the requirements of Act 29 of 2018. The Commonwealth's argument in this regard fails. Initially, the Commonwealth's presented analysis is predicated on a comparison between Megan's Law III and Act 29. Such analysis is flawed as Megan's Law III was declared unconstitutional in its entirety *ab initio* as the enactment violated the single subject rule. Nieman, 84 A.3d 603. Additionally, based on the above analysis, the punitive restraints imposed by Act 29 are not limited to the duration of any period of registration and notification.

The Commonwealth further contends that the Defendant lacks standing to assert any challenge to Act 29 and that any opinion offered by this court regarding the constitutionality of any retroactive application of the Act would amount to an improper advisory opinion. This argument lacks merit. Defendant is presently serving an aggregate sentence of not less than twenty-two years nor more than fifty years incarceration and has been subjected to the registration requirements imposed by the Sexual offender Registration and Notification Act. Based upon the implications of Muniz and Alston, as addressed, Defendant, as presently situated, would be subject to an unconstitutional *ex post facto* retroactive application of such statutory provision.

37

## APPLICABLE REGISTRATION REQUIREMENTS

Although making such determination, this is not to say that Defendant is not required to register as a sex offender. As noted above, in this matter, although the Commonwealth contended that defendant's course of conduct stretched from December 1, 2012, through October 14, 2014, the Commonwealth has conceded that there was no specific finding by the jury as to when the offenses occurred. (Commonwealth Memorandum, July 22, 2019). Megan's Law III, which has been found to be unconstitutional *ab initio*, would have otherwise been in effect until December 12, 2012, at which time SORNA became effective.[21]

The Pennsylvania Supreme Court has stated that "where . . . an act expressly repeals another act and provides a substitute for the act repealed and the substitute is found unconstitutional," the repealed act will not be accepted as repealed unless it appears the Legislature would have repealed it even without providing a substitute. Mazurek v. Farmers' Mut. Fire Ins. Co., 320 Pa. 33, 37-38, 181 A. 570, 572-73 (1935). With respect to sex offender notification statutes, the Legislature did not indicate an intent to repeal the sex offender registration requirements as it enacted a substitute for Megan's Law II by enacting Megan's Law III in 2004[22] and a substitute for Megan's Law III when it enacted SORNA in 2012. Thus, the prior law, that is the last prior law not held

---

[21] Megan's Law III expired on December 12, 2012, the date on which SORNA became effective. Subsequently, the Pennsylvania supreme Court held that Megan's Law III violated the single subject rule of the Pennsylvania Constitution and was unconstitutional in its entirety *ab initio*. Commonwealth v. Nieman, 84 a.3d 603 (Pa. 2013). SORNA is unconstitutional as an ex post facto law to the extent that its retroactive application increases a defendant's punishment. See Muniz.

[22] The Supreme Court has gone so far as to acknowledge that the Legislature "made . . . amendments to Megan's Law II with the passage of . . . Megan's Law III." Muniz, 640 Pa. at 713, 164 A.3d at 1197. The Supreme Court recently reiterated this point in Commonwealth v. Derhammer, 643 Pa. at 395 n.4, 173 A.3d at 725 n.4 (citing Muniz and stating "Megan's Law III did not completely repeal and replace Megan's Law II; rather it made significant changes to Megan's Law II").

unconstitutional, Megan's Law II, will not be treated as repealed. Megan's Law II did not provide for tier-based registration, but rather provided for ten-year registration or lifetime registration based upon the underlying crime. 42 Pa. C.S. § 9795.1.

In Commonwealth v. Horning, 193 A.3d 411 (Pa. Super. 2018), a defendant who committed offenses of rape and involuntary deviate sexual intercourse between 2002 and 2004, but was not charged until his minor victim disclosed the crimes in 2016, was required to become a lifetime registrant under SORNA when he pled guilty in 2017. The Superior Court held that even though application of SORNA would not increase the length of an offender's registration from that under Megan's Law II, which was in effect at the time he had committed his crimes, it would still increase his punishment because the registration requirements under SORNA were more onerous than those under Megan's Law II and the defendant, therefore, could not be compelled to register under SORNA. The Superior Court noted, however, that "this does not preclude [the defendant] from having to register as a sexual offender under Megan's Law II." Id. at 417 n.3. In the case of Rape of a Child, Megan's Law II provided for lifetime registration. 42 Pa. C.S. § 9795.1(b)(2). Defendant, therefore, is required to register for life under the terms of Megan's Law II.

For the reasons stated above, the court enters the following:

39

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA :

vs. : No. 0848 - 2015

RAMON LUIS JUSINO, JR. :

## ORDER

AND NOW, this 12th day of November 2019, upon consideration of Defendant's Amended Petition for Post-Conviction Collateral Relief, it is ordered that:

1. Defendant's Amended Petition is DENIED with respect to the claims of ineffective assistance of counsel.

2. Defendant's Amended Petition is GRANTED with respect to the claim that his sentence is illegal. Defendant shall be subject to Megan's Law II and required to register for his lifetime based on the underlying offenses.

BY THE COURT:

MERRILL M. SPAHN, JR., JUDGE

Attest:

Copies to:   James Reeder, Esquire, Assistant District Attorney
             Dennis C. Dougherty, Esquire, counsel for Defendant